HUNTER *et al.*, *Appellant*, v. WESTON *et al.*

Division Two, July 1, 1892.

1. **City**: STREETS: PUBLIC TRAVEL. A city is not required to open or to put all its streets in a condition for public travel, nor is it liable for the condition of a street which exists merely on paper.

2. ————: ALLEY: CITY ORDINANCES: NEGLIGENCE. An alley merely designated on paper, having no existence *de facto*, and never opened for public use, is not within the ordinances of Kansas City (secs. 1011 and 1036), providing for covering up dangerous holes and excavations adjoining streets and alleys, and section 1046 forbidding the leaving of a wagon or other vehicle in an alley without some beast of burden being harnessed thereto.

Hunter v. Weston.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*H. M. Meriwether* for appellants.

(1) The evidence fully supported the allegations of the petition. "Where there is any evidence at all tending to prove the allegation of the petition, the case should go to the jury." *Baum v. Fryrear*, 85 Mo. 151; *Moody v. Deutsch*, 85 Mo. 237. "A demurrer to the evidence admits every fact which any of the evidence tends to prove, and also every fact that the jury may with propriety infer from the evidence." *Noeninger v. Vogt*, 88 Mo. 590; *Donohoe v. Railroad*, 91 Mo. 360. (2) A child playing in the street is in lawful use of the highway. *Donohue v. Iron Works*, 75 Mo. 401; *Grogan v. Foundry Co.*, 87 Mo. 321. (3) The principle is the same, whether the pit be outside the highway or in the highway, the only question being, "Does it render the highway dangerous?" *Bassett v. City*, 53 Mo. 292; *Kiley v. City*, 87 Mo. 103. That is a question of fact for the jury. Shearman & Redfield on Negligence, sec. 11; 2 Thompson on Trials, secs. 1663, 1705; *Wyatt v. Railroad*, 55 Mo. 485; *Staples v. Canton*, 69 Mo. 592; Elliott on Roads & Streets, pp. 452–3; *Wyandotte v. Gibson*, 25 Kan. 236; *Warner v. Holyoke*, 112 Mass. 367. (4) Defendant Weston was negligent in maintaining this unprotected quarry so near the highway as to render it dangerous. 2 Thompson on Negligence, 771, 772; *Bassett v. City*, 53 Mo. 292; *Buesching v. Gas Co.*, 73 Mo. 219; *Fink v. Furnace Co.*, 10 Mo. App. 61; *Saunders v. Reister*, 1 Dak. 151. (5) Defendant, City of Kansas, was negligent in permitting the nuisance of the unhitched wagon, and in failing to

provide a barrier along this alley. It is bound to keep its highways in a reasonably safe condition. *Blake v. St. Louis*, 40 Mo. 507; *Kiley v. Kansas City*, 87 Mo. 103; *Carrington v. St. Louis*, 89 Mo. 208; *Grogan v. Foundry Co.*, 87 Mo. 321; *Erie v. Schwingle*, 22 Pa. St. 384. The negligence of defendants was the proximate cause of the injury. *Brennan v. City of St. Louis*, 92 Mo. 486. (6) When streets of a town have been laid out and dedicated, they are public highways, whether used as such or not. *Meyers v. Railroad*, 35 Mo. 352. (7) Whether a highway or bridge is reasonably safe for travel, by night as well as by day, is a practical question to be determined in each case by its particular circumstances. 2 Dillon on Municipal Corporations, sec. 789, quoted in *Staples v. Canton*, 69 Mo. 592, where the complaint was that plaintiff sustained injuries by falling off a bridge which had no railing. Elliott on Roads & Streets, pp. 452-3, and authorities there cited; *Burrell Twp. v. Uncapher*, 117 Pa. St. 353; s. c., 2 Am. St. Rep. 664; *Indianapolis v. Emmelman*, 108 Ind. 530.

*F. F. Rozzelle* and *F. P. Walsh* for appellant Kansas City, and *Karnes, Holmes & Krauthoff* for appellant Weston.

(1) The rule on this subject is that "the responsibility of the authorities for the condition of a highway begins when they have actually opened it up for public travel." Elliott on Roads & Streets, p. 456; *Bassett v. St. Joseph*, 53 Mo. 290; *Craig v. Sedalia*, 63 Mo. 417. "A city is not necessarily required to open or put all its streets in a condition for public travel." *Walker v. Kansas City*, 99 Mo. 647. It is not liable for the condition of a street which exists merely on paper. *Moore v. Cape Girardeau*, 103 Mo. 470, 476. (2) No duty having

been assumed or imposed by the defendant city con-
cerning the condition of the property platted as an
alley, it necessarily follows that no negligence can be
imputed to either of the defendants by reason of the
alleged insufficient or dangerous condition of the ground
so dedicated. "Negligence can only spring from unper-
formed duty." *Ward v. Fagin*, 101 Mo. 669; *Nicholson
v. Railroad*, 47 N. Y. 525; *Indianapolis v. Emmelman*,
108 Ind. 530; *Hargreaves v. Deacon*, 25 Mich. 1; *Trask v.
Shotwell*, 4 Minn. 66. (3) Weston's quarry was entirely
upon his own premises, and the precipice complained of
was seventy feet distant from the alleged alley. In exca-
vating his quarry Weston was exercising an undoubted
right. No obligation was assumed by him, nor duty
imposed to take precautions that trespassers, or even
licensees, who might come upon his premises should
not sustain injury by reason of his excavation. There
is no pretense in this case that Weston invited persons
to use his premises for the purpose of travel, nor that
he maintained an object calculated to allure and entice
children upon his property. Even if persons drove
across Weston's ground by his permission, they would
"take the license with its concomitant peril." (4)
So far as Weston was concerned, his liability was not
affected by reason of the ordinances pleaded in the
petition. *Eisenberg v. Railroad*, 33 Mo. App. 85;
*Norton v. St. Louis*, 97 Mo. 537; *St. Louis v. Ins. Co.*,
17 S. W. Rep. 637. (5) These ordinances (sec. 1036)
apply to excavations "in, near or adjoining" a highway,
and do not extend the rules of the common law upon
the same subject. *Hargreaves v. Deacon*, 25 Mich. 1,
6, 7; *Eisenberg v. Railroad*, 33 Mo. App. 85. (6) No
duty to erect barriers exists where a party would have
to become an intruder or trespasser upon the premises
of another, before reaching the excavation complained
of. *Clark v. Richmond*, 83 Va. 355; *Gillespie v.*

*McGowan*, 100 Pa. St. 144; *Hardcastle v. Railroad*, 4 H. & N. 67, 75. (7) It has further been established that liability for defects exist only in favor of those who are using the street as travelers at the time of the injury. The safety and convenience required to be secured for the public ways relate only to their use for the purpose of travel thereon. *Com. v. Wellington*, 105 Mass. 599; *Richards v. Enfield*, 13 Gray, 344; *Kiley v. Kansas City*, 87 Mo. 103; *Keyes v. Marcellus*, 50 Mich. 439; *Chapman v. Cook*, 10 R. I. 304.

THOMAS, J.—This is an action for personal injuries received by Mrs. Hunter on the sixteenth day of March, 1889. At the close of plaintiffs' evidence the court directed a nonsuit, and plaintiffs appeal.

In 1886 defendant Weston filed in the recorder's office of Jackson county a plat of Weston's addition to the City of Kansas. The land platted was bounded on the west by Clairmount street, on the south by Pacific street, on the east by land not laid off into town lots, and on the north by what is known as "Hurk's Resurvey," the latter extending north to Fifth street, that being the first street it reached. On the plat of Weston's addition, an alley fourteen feet wide is marked, extending from Pacific street to the north boundary of that addition, and, on the east line of Hurk's Resurvey, an alley six feet wide is marked on the plat thereof, extending to Fifth street. This alley is equidistant from Clairmount street and Highland avenue, the land between the alley and the avenue being unplatted and the avenue being about fifty feet higher than Clairmount street. The lots in Weston addition front twenty-five feet each on Clairmount street, running back to the alley over one hundred feet. Weston, still being the owner of these lots, opened a quarry on them, beginning on Clairmount street, and at the time Mrs.

Hunter was injured the excavation extending back some distance, its eastern wall being at the north end of Weston's addition, some seventy or eighty feet from the alley and extending diagonally across the lots in a southeast direction till it intersected the alley about one hundred and fifty feet from the north line of the addition, the quarry wall being twenty-five or thirty feet high. A wire fence was constructed in this alley, being six feet, three inches from the west line of the alley at the north end of the addition, and running south to within two feet of that line at the point of intersection with the wall of the quarry.

On "Hurk's Resurvey" immediately adjoining to Weston's addition was situated a dwelling-house, a part of which plaintiffs occupied, the other part being occupied by a man by the name of Cox. This house could not be approached from the west and south on account of the quarry excavation, nor from the north on account of a bluff on the south side of Fifth street, where the alley terminated; but it could be reached from the rear, by going along Highland avenue and thence across the unplatted land, entering the alley at the north end of the wire fence, where there was an opening in a hedge fence. Cox owned a two-horse wagon which he left, when not in use, sometimes on the east side of the hedge and wire fences, and sometimes in the alley. He did not use the wagon on the sixteenth day of March, 1889, and had left it standing in the alley some eight feet south from the north end of the wire fence, with the tongue in the fence. On that day, plaintiffs' little girl, Clara, about five years old, another little girl named Ettie Prill, about four years old and a little boy named Leo Prill, about six years old, were at this wagon playing. The two girls were in the wagon and the boy was playing with the tongue, swaying it to and fro. Mrs. Hunter, who was at work about her house,

saw the children and started towards them to take her child away; but before she reached them the boy fearing he would probably be reproached gave the tongue of the wagon a wrench, let it go, and the wagon, by its own gravity, started down the hill, tongue foremost, toward the quarry, the fall in the grade from the point where the wagon stood to the edge of the excavation being from five to eight feet, and the distance to the excavation being seventy-three feet, according to the measurements afterwards made. One witness put the distance at forty feet. The Prill girl got out of the wagon about the time it started to move. Mrs. Hunter ran after the wagon to save her child, reaching it just as it went over the precipice, and she went over with it. The child was killed, and she was seriously injured.

The plaintiffs also read in evidence the following sections of the ordinances of Kansas City:

"Sec. 1011. All dangerous holes, depressions, excavations or other dangerous places within the city that are below the natural or artificial grades of the adjoining streets, avenues or alleys, shall be filled up, covered over, or properly inclosed, or protected, with railings, fences or walls, so as to render the same reasonably safe to persons and property from falling therein."

"Sec. 1036. No person shall dig or cause to be dug in, near or adjoining any street, avenue, sidewalk, alley, or other public place, any vault, area, coal hole, basement, cellar or opening without covering the same, and securing the grading or covering thereof in such a manner as is provided by ordinance, to prevent persons from falling therein; nor shall any person keep, maintain or leave open any cellar door, etc., area, coal hole in, near or adjoining any sidewalk, alley, highway or other public place. Nor shall any person suffer or allow any such cellar door, etc., in front of, or alongside of any house, building, lot or premises owned

or occupied by him, to remain open in an insecure cóndition, or out of repair." P. 84.

"Sec. 1046. No person shall place or leave, or cause to be placed or left, any hack, carriage, wagon, cart, dray, sleigh, sled or other vehicle, without some beast of burden shall be properly harnessed thereto, in or upon any street, avenue, alley, sidewalk, public square, public walk or dock."

The alley in question had not been improved in any respect, and there was nothing to distinguish it from the adjoining open space, there being no fence between it and Clairmount street.

Plaintiffs predicate their right to recovery against defendant Weston on his negligence in maintaining the unprotected quarry so near the alley as to render it dangerous, and against the city on its negligence in permitting the unhitched wagon to remain in the alley, and in failing to provide a barrier between the alley and quarry.

The controlling question here presented hinges, therefore, on the duty of defendants in respect of the alley in question. If this alley does not come within the purview of the ordinances of the city read in evidence, then the defendants owed no duty to plaintiffs in respect of it as such, and plaintiffs have no cause of action for the injuries complained of. That the alley existed on paper only, is beyond dispute, and that it had never been opened for public travel, is equally clear. It was not even a *cul de sac*, being closed at both ends. A wire fence was constructed in it, beginning six feet, three inches from its west line at the north end of Weston's addition, and running southwardly to within two feet of that line at the intersection of the alley and the quarry excavation.

Two perpendicular walls prevented an approach to the alley from either end. It was at the time, as nature

had left it, there being nothing to distinguish it from the open space south of the wire and hedge fences. No work of any kind had been done on it. No one thought of traveling it.

"A city is not necessarily required to open or put all its streets in a condition for public travel." *Walker v. Kansas City*, 99 Mo. 647. Nor is it liable for the condition of a street which exists merely on paper. *Moore v. Cape Girardeau*, 103 Mo. 470. "The responsibility of the authorities for the condition of a highway begins when they have actually opened it for public travel." Elliott on Roads & Streets, 456. "But the mere fact of establishing a highway by judicial action does not of itself so open it to the public as to render towns liable for accidents that may occur to travelers thereon. After it is thus legally established, it is to be prepared for public use. Labor is to be performed upon it. Bridges are to be built, hills cut down and valleys filled up; obstructions are to be removed and rough places to be made smooth." *Blaisdell v. Portland*, 39 Me. 113. "It may be and doubtless is the case that there are streets and parts of streets in many cities, which are not at present necessary for the convenience of the public, and that will be brought into use by the growth of the city, * * * and that all that is required in such cases is that the city shall see that, as the streets are required for use, they shall be placed in a reasonably safe condition for the convenience of travel." *Bassett v. St. Joseph*, 53 Mo. 290; *Craig v. Sedalia*, 63 Mo. 417.

This alley, which was merely designated on paper, having no existence *de facto*, and never having been opened for public use, defendants owed plaintiffs no duty in respect to it as an alley under the said ordinances, and they are not liable in this case.

This conclusion renders it unnecessary to discuss several other important questions presented by counsel. The judgment is affirmed. All concur.·

111  185
112  501

111  185
54a  593

111  185
62a  681

111  185
71a  122

111  185
154  66

111  185
157  384