SAVANNAH, FLORIDA AND WESTERN RAILWAY COMPANY *v.* BEAVERS.

One who makes an excavation upon his land is not bound to so guard it as to prevent injury to children who come upon it without his invitation, express or implied, but who are induced to do so merely by the alluring attractiveness of the excavation and its surroundings.

Argued December 10, 1900.— Decided May 21, 1901.

Action for damages.　Before Judge Bennet.　Ware superior court.　July 14, 1900.

*Chisholm & Clay*, for plaintiff in error.　*L. A. Wilson*, contra.

FISH, J.　A. A. Beavers obtained a verdict and judgment against the Savannah, Florida and Western Railway Company for the death of his minor child, and upon the defendant's motion for a new trial

being overruled it excepted. There was but little conflict in the evidence, and that in behalf of the plaintiff conduced to establish the following facts: The defendant railway company undertook to construct a water-tank upon its premises. The work was temporarily suspended, and an excavation twelve feet square, about seven feet deep, and containing about four or five feet of muddy water, concealing its depth, was left uncovered, and guarded only by piling placed around it, some eighteen inches in height. Upon the sides of the excavation and two feet from the surface of the ground there was a ledge or sill, five by ten inches. There was a ladder and a long-handled pump left in the excavation, the ladder extending to the top. Near by there was a tramroad upon which there was a small flat car, used for hauling away dirt taken from the hole. Eight and a half feet from the edge of the excavation and along the outer line of the defendant's right of way there ran a footpath, much traveled by the public. Some twenty-eight feet from the excavation there was a canal, along the banks of which there were berries and flowers, which children were accustomed to gather. There were no flowers or berries immediately about the excavation. It did not appear that the officers of the defendant company knew that children frequented the locality. The foreman of the "gang," while making the excavation, saw children gathering flowers and berries along the banks of the canal and observing the progress of the work, but of this he never informed the officers of the company. No one lived nearer to the excavation than one hundred yards, and the plaintiff resided four or five hundred yards away. The public street was about one hundred yards distant therefrom. Plaintiff's two sons, one nine and the other five and a half years old, went with two other boys, the elder of whom was eleven years of age, to the excavation to play with frogs, and while the younger son of the plaintiff was standing on the ledge, inside the hole, engaged in such childish sport, he fell into the water and was drowned. All of these boys had been playing with the frogs in the excavation for several days prior to the accident, but there was no evidence that any of the company's officials had knowledge of this fact. A day or two before the accident a man passing by warned these boys to get away from the excavation or they would get hurt. In going to this place the boys did not use the footpath. Neither plaintiff nor his wife knew of the existence of the excavation.

Under the facts stated, was the defendant company liable in damages to the plaintiff for the death of his child? This question turns upon another, that is, whether or not the company owed the child any legal duty which it neglected to perform, for there can be no actionable negligence without the breach of a legal duty. The rule is too well settled to need the citation of authority, that a landowner is under no duty to have his land in safe condition for an adult trespasser to enter thereon. Such a trespasser has ordinarily no remedy for an injury happening to him by reason of the condition of the property upon which he intrudes; he takes the risk of the condition of the premises. Nor is the owner bound to warn him of non-apparent dangers, provided they were not prepared with intent to harm trespassers. Is there any difference in the case of a child entering upon the premises without the permission of the owner? There is an irreconcilable conflict of authority, in this country at least, upon the question, and it is not easily determined which way the weight of authority inclines. There are many decisions by courts of great respectability to the effect that: "When a child of tender years commits a mere technical trespass, and is injured by agencies that to an adult would be open and obvious warnings of danger, but not so to a child, he is not debarred from recovering, if the thing instrumental in his injury were left exposed and unguarded, and were of such a character as to be likely to attract children, excite their curiosity, and lead to injury, while they were pursuing their childish instincts. Such dangerous and attractive instrumentalities become an invitation by implication." 7 Am. & Eng. Enc. L. (2d ed.) 403, 404. On the other hand, there are numerous cases wherein courts of the highest respectability enunciate the doctrine that an owner or occupier of land is ordinarily under no obligation to a trespasser so far as concerns the condition of his premises, and the fact that the trespasser is an infant of tender years affords no reason for modifying this rule and charging the owner or occupier of land with a duty which does not otherwise exist. And if for more beneficial user he creates upon his premises an instrumentality which happens to be attractive to children, he does not thereby extend to them an implied invitation to enter thereon. The tendency of the more recent decisions seems to be in favor of the doctrine last mentioned, and we are of opinion that upon principle it is the stronger side of the question. The principle

involved has been so frequently and elaborately discussed by learned
jurists that it is unnecessary to do more than refer to some of the de-
cisions which are particularly applicable to the case which we have
under consideration.    Before doing so, however, we take the liberty
of making a somewhat extended quotation from a monograph in
11 Harvard Law Review, 349 – 373, 434 – 448, by the Hon. Jere-
miah Smith, formerly one of the Justices of the Supreme Court of
New Hampshire, wherein the subject, "Liability of Landowners to
Children entering without Permission," is very learnedly and ex-
haustively treated.    In maintaining the proposition that the land-
owner is under no duty, so far as concerns the condition of his
premises, to intruding children, that eminent jurist says:

"Assuming, then, that the law is not only settled, but is also con-
sistent, in holding that the owner of land is not liable for the con-
dition of his premises to an adult who enters without permission,
the next inquiry is:    What difference is there between the case of
the adult intruder and the child intruder?    Are there considera-
tions which do not exist in the case of the adult, and which, when
put into the scale, ought to turn the balance in favor of the child?
The two prominent arguments are:    (1) that the child is innocent;
(2) that the child is incapable of protecting itself.    What force is
to be allowed to these considerations; and do they, when estimated
at their true value, outweigh the reasons against imposing liability
upon the landowner?    .    .    Of course the innocence of a plaintiff
does not per se establish the fault of a defendant.    The landowner
can not be liable unless he owed to the child a duty which he has
neglected.    Should the law, in view of the innocence of the child,
impose on the landowner the duty here in controversy?    No doubt
there are cases where a defendant is rightly held liable to a child
plaintiff when he would not be liable to an adult plaintiff under
similar circumstances.    Where it is admitted that a duty exists to
use care to avoid harm to both children and adults (e. g., in the
the use of the public highway), then, in point of fact, more care
may be required towards a child than towards an adult.    In view
of the child's helplessness and unconsciousness of danger, more care
may, as matter of fact, be required under the unvarying legal rule
of 'due care under the circumstances;' just as more care, in fact
though not in law, may be required to avoid colliding with an ob-
viously lame or blind adult than with a vigorous man in full pos-

session of all his faculties.    But all this is true only where it is admitted or proved that a duty exists.    'In considering the question as to whether a duty exists, there is no distinction between the case where an infant is injured and one where the injury is to an adult, though where the duty is imposed the law may exact more vigilance in its discharge as to the former.'    [Citing Denman, J., in Dobbins v. Railroad Co., 41 S. W. Rep. 62.]    So if it be conceded or proved that the defendant was negligent, and that his negligence constituted part of the legal cause of the plaintiff's damage, then the incapacity and immaturity of a child plaintiff may furnish a good answer to the defense of contributory negligence.    Conduct of the plaintiff which would have been negligent in an adult may not be held negligent in a child.    But the fact that the child plaintiff was not 'capable of contributory negligence' does not necessarily establish that the adult defendant was negligent.    It does not per se prove that the defendant owed to the plaintiff a duty, or that he failed to perform a duty.    'If there was no breach of duty, then there was no wrong, irrespective of the boy's capacity to know that what he was doing was dangerous.'    [Citing Lurton, J., in Felton v. Aubrey, 74 Fed. Rep. 353.]    'The fact that injury has resulted, and to a child himself incapable of negligence, will not import the negligence of the defendant, which is the sole ground of liability.' [Citing 1 Beven on Negligence (2d ed.), 183; Culbertson v. Railroad Co., 48 La. Ann. 1380; Emerson v. Peteler, 35 Minn. 481; Catlett v. Railroad Co., 57 Ark. 461.]    Obviously cases of the two foregoing classes do not furnish arguments from analogy in favor of creating a duty towards children in situations where no duty at all would exist towards adults.

"Why should innocent children have greater rights than innocent adults, in respect to damage resulting from the nature of the premises upon which they enter without permission?    Remedy against the landowner for harm happening from the condition of the premises is denied to adults who are entirely free from intent to violate rights, and whose presence upon the land is due to pardonable mistake or to irresistible external force.    The test is not whether their motives were innocent or even laudable, or whether their conduct was careful, but whether they entered without the owner's permission.    If so, they can not claim that the owner was under a duty to make things safe for their access, or to give warn-

ing of non-apparent danger. [Citing Morgan *v.* Hallowell, 57 Me. 377; Gramlich *v.* Wurst, 86 Pa. St. 74.] It may possibly be suggested that an adult trespasser is barred upon grounds inapplicable to a childish intruder. It may be urged that the adult is barred by his own wrong: both (1) because he must always be regarded as guilty of contributory negligence; and (2) because, even if not negligent, he is a tortfeasor in the technical sense; whereas a young child may be incapable of negligence and ought not to be regarded as even technically a tortfeasor. But this argument entirely misconceives the true reason why an adult trespasser fails to recover in the case supposed. The decision turns, not upon the presence of fault in the plaintiff, but upon the absence of fault in the defendant. The plaintiff's action is defeated, not because his own wrong bars a recovery against the landowner who has neglected to perform a duty owing to him, but because he has not succeeded in establishing the primary proposition that the landowner owed to him the duty in question. His trespass is not necessarily and always a negligent act, and hence does not invariably bar him on the ground of contributory negligence. [Citing 1 Shearman & Redf. Negl. (4th ed.) §§ 97, 98.] Nor does his tort, even when he is a conscious and morally inexcusable trespasser, prevent his recovering against the landowner for negligently bringing force to bear upon him by a positive act done after his entry, i. e., by what Clerk & Lindsell [2d ed. 14] call 'a negligent act of commission.' But when an adult who entered without permission seeks to recover against the landowner for harm happening from the condition of the premises, he fails even though he were morally blameless. He may be a technical tortfeasor, but recovery is not denied to him by way of punishment for his own 'wrong.' He fails because the landowner owed him no duty to have the premises in safe condition for his entry. [Citing Shearman & Redfield, supra.] Why should the moral innocence of a childish intruder raise a duty on the part of the landowner which is not created by the moral innocence of an adult intruder? The youthful innocence of the child does not make restrictions on the right of user less damaging to the owner, or make the alleged duty of preventing the entrance of an intruder or of protecting him from harm after entry less burdensome, than in the case of an adult. Indeed, the duty would be more onerous in the case of a child. . .

" The child, it is said, is incapable of protecting itself; and hence it is eloquently contended that the law must impose the duty of protection upon landowners. The apparent assumption is, that all the children in the world are mere waifs and strays, and that the duty of caring for them must be imposed upon the landowners because the law can find no one else to bear the burden. [Citing the language of Mr. Justice Agnew in Hydraulic Works Co. *v.* Orr, 83 Pa. St. 336.] The fact is, that the vast majority of children have protectors appointed alike by nature and by law, viz., their parents, who have legal power to control their actions, and whose moral duty to keep their children from entering upon dangerous premises is generally regarded as at least equal to the moral obligation of the landowner to fence them out. If the child, upon entering on the premises, is hurt by the 'active negligence' of the owner in bringing force to bear upon him, it may well be that the negligence of the parent in failing to restrain the child's entrance does not bar the child's recovery for the force thus brought to bear upon him after his entrance. But it is going far beyond this to say that the child can recover for harm sustained by him through the condition of the premises, without the immediate intervention of any human agency save his own. [Citing Felton *v.* Aubrey, supra.] When a child wakes up in the morning in his father's house, the duty of providing a safe playground for him during the day rests upon his parents. Is this duty shifted from the parent to private landowners because the child chances to escape from the parent's care ? [Citing Clark *v.* Manchester, 62 N. H. 577; Missouri R. Co. *v.* Dobbins, 40 S. W. Rep. 861.] If those who brought the child into the world are unable, by reason of poverty, to provide him a playground, this may afford an argument for the passage of a statute imposing that duty upon the municipality, in which case each landowner would have to contribute his proportion of the expense. But this is quite another thing from assessing upon a single unfortunate landowner the entire damage arising from the want of such a playground." [Citing Ross *v.* Keith, 16 Scotch Session Cases, 4th Series, p. 89.]

An early case, and one often referred to, is that of Hargreaves *v.* Deacon, 25 Mich. 1. There the plaintiff, as administrator, sought to recover damages for the death of his son, a child of tender years, who was killed by falling into a cistern which had been left un-

covered on premises not immediately adjoining the highway. It was held: " Owners of private property are not responsible for injuries caused by leaving a dangerous place unguarded, where the person injured was not on the premises by permission, or on business, or other lawful occasion, and had no right to be there." Mr. Justice Campbell, in delivering the opinion of the court, says: "Cases are quite numerous in which the same questions have arisen which arise in this case, and we have found none which hold that an accident from negligence, on private premises, can be made the ground of damages, unless the party injured has been induced to come by personal invitation, or by employment which brings him there, or by resorting there as to a place of business or of general resort held out as open to customers or others whose lawful occasions may lead them to visit there.　We have found no support for any rule which would protect those who go where they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience, in no way connected with business or other relations with the occupant." In Overholt v. Vieths, 93 Mo. 422, the eight-year-old son of the plaintiff was drowned in a pond of water, not bordering on the highway, which had been formed in consequence of rock having been quarried on a lot owned by the defendant.　It was ruled that the owner of the quarry was under no obligation to build a fence around it to keep trespassers away, nor liable for injury to them occasioned by the absence of such a fence.

In Klix v. Nieman, 68 Wis. 271, the declaration alleged that the defendant was the owner and in possession of a vacant and uninclosed lot in a thickly settled part of the city of Milwaukee, to which the public had free and unobstructed access; that for a long time there had existed upon the lot a deep and dangerous hole or excavation, partially filled with water, making a pond which covered about the entire surface of the lot; that the water of the pond was roily, so that its depth could not be ascertained except by measurement, but that in places it was nine feet deep, so that the pond was dangerous to the lives of children who might be attracted thereto, for amusement or otherwise; that the defendant, well knowing that the pond was dangerous to the lives of children residing in the vicinity of the same, wrongfully, negligently, and carelessly permitted it to remain unguarded by a fence or barricade, and that

plaintiff's son, a lad nine years of age, "while playing upon and about said pond of water, being induced thereto by reason of the unguarded and unprotected condition of said hole as aforesaid, fell and was precipitated into the same and was drowned." A demurrer to the declaration was sustained in the trial court, which ruling, on appeal, was affirmed by the Supreme Court. Mr. Chief Justice Cole, speaking for the court, said: "The single question presented is, was it the duty of the defendant to fence or guard this hole, or excavation, on his lot (which it does not appear he made, or caused to be made), when surface-water collected, in order to secure the safety of strangers, young or old, who might go upon or about the pond for play or curiosity? If the defendant was bound to so fence or guard the pond, upon what principle, or ground, does this obligation rest? There can be no liability unless it was his duty to fence the pond. It surely is not the duty of an owner to guard, or fence, every dangerous hole, or pond, or stream of water on his premises, for the protection of persons going upon his land who had no right to go there. No such rule of law is laid down in the books, and it would be most unreasonable to so hold." Citing 1 Thomp. Neg. 361.

The facts in the case of Gillespie *v.* McGowan, 100 Pa. St. 144, are quite similar to those in the case under consideration. There the defendants "were the owners of a lot of ground in the outskirts of Philadelphia, upon which there was and had for some time been a deep well. The nearest paved highway ran three hundred feet from the well, and the nearest road about eighty feet. There were houses about three hundred feet off, but the built-up part of the city was nearly half a mile distant. Whether any paths led near the well was disputed. The well was uncovered and was not hidden by bushes or shrubbery. It was not fenced around, nor was the lot in which it lay. The lot was a common place of resort for children and adults. A boy of a little less than eight years of age was found drowned in the above well, his hat being found on the side, together with a few small fishes. In a suit by the boy's father against [the defendants] to recover damages for his death: — *Held*, that the boy was a trespasser, and that [the defendants] had not been guilty of any such negligence as would render them liable for his death." In delivering the opinion of the court, Mr. Justice Paxson said: "Nor do we assent to the broad proposition that

'the owner of premises in the neighborhood of a populous city, and opening on a public highway, must so use them as to protect those who stray upon them and are accidentally injured.' This doctrine rests chiefly upon the case above referred to [Hydraulic Works Co. v. Orr, 2 Norris, 332], which was not intended to decide any such principle, and is in direct conflict with the recent well-considered case of Gramlich v. Wurst, 5 Norris, 74, in which it was held that 'where the owner of land in the exercise of lawful dominion over it makes an excavation thereon which is such a distance from the public highway that a person falling into it would be a trespasser upon the land before reaching it, the owner is not liable for an injury thus sustained.' . . We are unable to see anything in this case to charge the defendants with negligence in not enclosing their lot or guarding the well. There was no concealed trap or deadfall, as in Hydraulic Company v. Orr. The well was open and visible to the eye. No one was likely to walk into it by day, and this accident did not occur at night. A boy playing upon its edge might fall in, just as he might in any pond or stream of water. In this respect the well was no more dangerous than the river front on both sides of the city, where boys of all ages congregate in large numbers for fishing and other amusements. Vacant brick-yards and open lots exist on all sides of the city. There are streams and pools of water where children may be drowned; there are inequalities of surface where they may be injured. To compel the owners of such property either to enclose it or fill up their ponds and level the surface so that trespassers may not be injured would be an oppressive rule. The law does not require us to enforce any such principle even where the trespassers are children. We all know that boys of eight years of age indulge in athletic sports. They fish, shoot, swim, and climb trees. All these amusements are attended with danger, and accidents frequently occur. It is part of a boy's nature to trespass, especially where there is tempting fruit; yet I never heard that it was the duty of the owner of a fruit-tree to cut it down because a boy trespasser may possibly fall from its branches. Yet the principle contended for by the plaintiff would bring us to this absurdity if carried to its logical conclusion. Moreover, it would charge the duty of the protection of children upon every member of the community except their parents."

In Clark v. Manchester, 62 N. H. 577, the City of Manchester

began filling a reservoir, but left a portion of the excavation, which contained water. The excavation was uninclosed. The plaintiff's boy, a little less than four years old, and living with his parents about one hundred and fifty feet from the reservoir, having followed, with a crowd of other boys, a band of music to the gate of a play or ball-ground near by, and wandering by the reservoir excavation, fell into the water and was drowned. On the facts stated, it was held that an action could not be maintained by the administrator of the child against the city, and the case was "discharged." Subsequently the plaintiff amended his declaration by alleging, "that the place of the reservoir, at the time of the injury, was an unguarded excavation, pit, and trap, near to the public street and the residences of a large number of people, including that of the plaintiff, and the water therein, together with the work of filling the excavation, was calculated to and did allure to it young children; that the defendants had knowledge of the situation, and these facts were a license and invitation to the plaintiff's child to come there; and that, neither he nor his parents being in fault, he went there, fell into the pit, and was drowned." Mr. Justice Allen, rendering the opinion of the court, said: "If the facts stated in this count were proved, they would not establish the defendants' liability. The excavation for a reservoir was not made and filled with water for a trap, but for a lawful use by the defendants on their own land. The averment of license and invitation to the child to go there is one of argument by inference from the facts stated, and the facts positively averred do not warrant and support the inference. The fact that children went to the reservoir pit from curiosity or for pleasure, without objection of the defendants, was not an invitation or license to go there. The child was not upon the land by invitation, nor under circumstances which made it the duty of the defendants to protect him. He was there to gratify his curiosity, or for mere pleasure, and the defendants owed him no special duty. It was not a case of setting a trap for the children, nor one of wantonly and knowingly leading them into danger and this one into destruction. It was the ordinary case of a landowner managing, within the bounds of his own land, his own property in his own way for his own use and benefit, and though in doing this he might find occasion to construct reservoirs, provide fish-ponds, plant and cultivate fruit-trees, erect and maintain useful structures, instruments, and machinery, all

of which are alluring, attractive, and dangerous to children, yet it could not be claimed that he must constantly guard these things against the approach of persons coming without license or invitation, or suffer in damages for any injury they might receive. The rule that the owner of land may manage it in his own way for his own benefit, and owes no duty to those who come upon it for no business purpose, but without license express or implied, is too well established to need further comment, or to warrant a departure from it."

In Richards v. Connell, 45 Neb. 467, the allegations of the petition were, in substance, that the defendants had for a long time negligently permitted the surface-water to accumulate on certain lots which they owned and were in possession of, thereby creating a deep and dangerous pond, and that they had failed and neglected to fence such lots or to erect barriers of any kind to prevent children, lawfully in the vicinity thereof, from falling into said pond; that the lots were situated in the vicinity of one of the public schools of the city of Omaha, and that the pond was not only dangerous to persons passing along a named street adjacent thereto, but was in a public and much frequented place and attractive to children of tender age, many of whom were accustomed to play about and upon said water; that on a given day the plaintiff's intestate, a boy ten years of age, yielding to the natural impulse of childhood, went on said pond, upon a section of a wooden sidewalk out of which he had constructed a raft, and while floating thereon fell into the pond and was drowned. A demurrer to the petition was sustained, upon the ground that it failed to state a cause of action against the owers of the land, the court holding: "The owner of a vacant lot upon which is situated a pond of water or dangerous excavation is not required to fence it, or otherwise insure the safety of strangers, old or young, who may resort to said premises, not by invitation express or implied, but for the purpose of amusement or from motives of curiosity." To the same effect see City of Omaha v. Bowman (Neb.), 72 N. W. Rep. 316, where a boy, seven years old, was drowned by falling off a raft floating on a pond, which had been made by the city in constructing and filling up a certain street. So in Peters v. Bowman, 115 Cal. 345, it was held: "The owner of a vacant lot upon which a pond of water has accumulated by reason of an embankment erected by the city in the grading of the street, prevent-

ing the flow of surface-water from the lot, owes no duty to trespass-ers to keep the water from accumulating upon the premises, nor to keep the lot guarded against trespasses by children, and is not lia-ble for the death of a child from drowning while trespassing in the lot." In that case a boy, eleven years old, was drowned by falling into the pond from a raft thereon. In Ratte *v.* Dawson, 50 Minn. 450, " Where a child of tender years was taken by an older sister, to whose care it was intrusted, to vacant residence lots in a city, for recreation and pleasure, and was accidentally knocked down and killed by the caving in of an embankment, caused by excavations for sand, and which had been left unfenced, [it was] held, that the landowner was not liable in damages, and that he owed no duty to persons coming upon the premises, without his invitation, to protect them from danger from excavations thereon." The court said: " There is nothing to take the case out of the general rule, that where the owner of land, in the exercise of his lawful dominion over it, makes an excavation thereon, so far from the street that a per-son coming onto the land without his invitation, and falling into it, would be a trespasser before reaching it, such owner is not liable to an action for the injury sustained. . . The maxim, sic utere tuo, etc., has no application to such a case. It refers to acts the effects of which extend beyond the limits of the property, and to neigh-bors who do not interfere with it or enter upon it. If the rule were otherwise, a landowner could not sink a well or dig a ditch or open a stone quarry on his own land, except at the risk of being made liable for consequential damages, which would unreasonably re-strict its enjoyment." It was held in Grindley *v.* McKechnie, 163 Mass. 494, that: " An owner who digs a deep hole on his unfenced land about twenty-five feet from the street, which fills with water, and is concealed by boards and shavings floating on the surface, is not liable in damages for the death of a child five years old, who, without the consent of the owner, goes on the land and is drowned in the hole."

Among the cases relied on by the defendant in error is that of *Ferguson* v. *Columbus & Rome Railway*, 75 *Ga.* 637, 77 *Ga.* 102, wherein this court held: " Where a railroad company leaves a dangerous machine, such as a turntable, unfastened in a city, on a lot which is not securely inclosed, and where people and children are wont to visit it and pass through it, this is negligence on the

part of such company; and where an infant of ten or twelve years of age resorted to the turntable, and in riding upon it was dangerously and seriously injured, the railroad company is liable for damages for such injuries to the infant." The rule of the so-called "turntable cases" has been adopted by many of the courts; by others it has been severely criticised, and by some wholly repudiated. Some of the courts which have recognized the rule have limited its operation strictly to turntables and other dangerous and attractive machinery. It has been repudiated by the courts of last resort in New Hampshire, Tennessee, Massachusetts, New York, and New Jersey. See Frost v. Railroad Co., 64 N. H. 220; Bates v. Railroad Co., 90 Tenn. 36; Daniels v. Railroad Co., 154 Mass. 349; Walsh v. Railroad Co., 145 N. Y. 301; Delaware, L. & W. R. Co. v. Reich (N. J.), 40 Atl. Rep. 682. Liability was also denied in Railroad Co. v. Bell, 81 Ill. 76, on account of "the isolated position" of the turntable in question. The rule was recognized in Keffe v. Railway Co., 21 Minn. 207, wherein Mr. Justice Young pronounced, perhaps, the ablest opinion ever delivered in support of the doctrine. The same court, however, in Twist v. Railroad Co., 39 Minn. 164, clearly intimated that the doctrine of "the turntable cases" ought not to be extended; and in Stendal v. Boyd, 67 Minn. 279, said: "We did not mean by [what was said in Twist v. Railroad Co.] that we would not apply the doctrine to any but 'turntable cases,' but merely that we would not extend the doctrine to cases which, upon their facts, did not come strictly and fully within the principle upon which those cases rest. We would not extend it to an ordinary case of a landowner merely allowing a pool or pond of water to stand on a vacant lot. To bring a case of such a pond within the principle of these cases, it would have to be exceptional and peculiar in its circumstances." And in Ratte v. Dawson and Dehanitz v. City of St. Paul, supra, and in Haesley v. Railroad Co., 46 Minn. 233, the principle was considerably limited in its application. In the last-mentioned case the court held: "A railway company maintaining what is known as a 'gravity' yard or side-track, has undoubtedly performed its duty as to a trespassing child of tender years strictly not sui juris, when it securely fastens, by means of the ordinary appliance or brake, such cars as it may have occasion to place upon the grade of its track." In Koons v. Railroad Co., 65 Mo. 592, the doctrine of "the turntable

cases" was followed, but it was limited, as has been seen, in Overholt *v.* Vieths, supra, and again in Barney *v.* Railroad Co., 126 Mo. 372, where the court held: "Railroad cars and similar machinery are not 'dangerous machines' within the meaning of the rule declaring turntables to be such;" and also in Witte *v.* Steifel, Ib. 295, where it was held: "The owner of a building, in process of construction in a city, is not liable for injuries to a child playing thereat without his knowledge and without any inducement or invitation, implied or otherwise, on his part to the child to go upon the premises." In Railway Co. *v.* Fitzsimmons, 22 Kan. 686, and Railway Co. *v.* Dunden, 37 Kan. 1, the doctrine of "the turntable cases" is recognized, but in Railroad Co. *v.* Bockoven, 53 Kan. 279, where it appeared that a child was killed by falling off a defective gate of a railroad company, upon which it was swinging, the court said: "We are not willing to extend the rule declared by this court in the Fitzsimmons and Dunden cases. In some of the courts the rule in those cases has been questioned, and in others denied." In Evansich *v.* Railroad Co., 57 Tex. 126, and other cases decided by the Supreme Court of that State, the turntable rule has been followed; but in Missouri Railroad Co. *v.* Dobbins (Texas Court of Civil Appeals), 40 S. W. Rep. 861, affirmed by the Supreme Court of Texas, 41 S. W. Rep. 62, the rule is sharply criticised, the latter court holding: "The common law does not impose upon the owner of property the duty to use care to keep his premises in such condition that a child of tender years going thereon may not be injured. . . A railroad company which constructs a platform for the reception of freight and passengers, and a path of plank leading thereto, would not be liable to any one who fell from the path into an excavation, who was not going to or from the platform on business connected with the company." There it appeared that plaintiff's child, less than three years old, fell into such excavation and was drowned. The rule of "the turntable cases" was recognized also in Barrett *v.* Southern Pacific Co., 91 Cal. 296, but, as we have seen, in Peters *v.* Bowman, supra, the rule was not extended to a case where a child trespassing upon an unguarded lot fell into a pond thereon and was drowned. The rule was also recognized in Railroad Co. *v.* Bailey, 11 Neb. 332, but, as we have already seen, in Richards *v.* Connell, 45 Neb. 467, it was not applied where the child of the plaintiff was trespassing upon the lot of the defendant

and was drowned by falling from a raft on a pond thereon. Adopting what we believe to be the wise course of these courts in limiting the doctrine of "the turntable cases," we hold that the case of *Ferguson* v. *Railroad Co.*, supra, is not authority which is applicable to the facts of the case under consideration. Our conclusion is that the evidence in this case does not disclose the breach of any duty lawfully due from the defendant railway company to the deceased child, and consequently did not warrant a finding that his death was occasioned by its negligence. Irrespective, therefore, of other questions presented, the verdict in favor of the child's father was without evidence to support it, and the trial court erred in not setting it aside.

As supporting the rule that the owner or occupier of land owes no duty of immunities to trespassing children, see the following cases, and authorities therein cited: Central R. Co. v. Henigh, 23 Kan. 347; Green v. Linton, 27 N. Y. Supp. 391; Powers v. Creem, 48 N. Y. Supp. 21; Newdoll v. Young, 80 Hun, 364; McAlpin v. Powell, 70 N. Y. 126; Sterger v. VanSicklen, 132 N. Y. 499; Murphey v. Brooklyn (N. Y.), 23 N. E. Rep. 887; Severy v. Nickerson, 120 Mass. 306; McEachern v. Boston R. Co., 150 Mass. 515; McGuieness v. Butler, 159 Mass. 233; Gay v. Railway Co., Ib. 238; Holbrook v. Aldrich, 168 Mass. 15; Galligan v. Mfg. Co. (Mass.), 10 N. E. Rep. 171; Breckenridge v. Bennett, Penn. Com. Pl. 7 Kulp, 95; Rodgers v. Lees, 140 Pa. St. 475; Bridge Co. v. Jackson, 114 Pa. St. 321; Talty v. Atlantic, 91 Iowa, 135; Ritz v. Wheeling (W. Va.), 31 S. E. Rep. 993; Fredericks v. Ill. Cent. R. Co., 46 La. Ann. 1180; O'Connor v. Ill. Cent. R. Co., 44 La. Ann. 339; Gulf, Colo. & S. F. R. Co. v. Cunningham, 7 Tex. Civ. App. 65; Oil Co. v. Morton, 70 Tex. 400; Missouri R. Co. v. Edwards (Tex.), 36 S. W. Rep. 430; Slayton v. Railroad Co., 40 Neb. 840; Vanderbeck v. Hendry, 34 N. J. L. 467; Phillips v. Library Co. (N. J.), 27 Atl. Rep. 478; Fitzpatrick v. Cumberland Mfg. Co. (N. J.), 39 Atl. Rep. 675; Benson v. Traction Co., 77 Md. 536; Kayser v. Lindell (Minn.), 75 N. W. Rep. 1038; Dehanitz v. St. Paul (Minn.), 76 N. W. Rep. 48; Buch v. Amory Mfg. Co. (N. H.), 44 Atl. Rep. 809; Robinson v. Railway Co., 7 Utah, 493, 27 Pac. Rep. 689; Charlebois v. Railroad Co., 91 Mich. 59; Moran v. Car Co. (Mo.), 36 S. W. Rep. 659; Clark v. Richmond, 83 Va. 355; City of Indianapolis v. Emmelman, 108 Ind. 530.

*Judgment reversed. All the Justices concurring.*