## HAGEAGE *v.* DISTRICT OF COLUMBIA.*

---

MUNICIPAL CORPORATIONS; HIGHWAYS; DEDICATION; NEGLIGENCE; DANGEROUS PREMISES.

1. The mere dedication and acceptance of land for an alley do not impose upon the District of Columbia the duty of maintaining the same as a public alley, where it has been neither opened to public travel nor used as a public thoroughfare.

2. No inherent dangers within the doctrine of attractive nuisances, and no concealed dangers amounting to a nuisance, are involved in uneven, declivitous ground leading to the top of a high retaining wall, or in the fact that the wall is unguarded, so as to render the Dis-

---

*Nuisance.*—For an exhaustive note upon the subject of attractive nuisance, see 19 L.R.A.(N.S.) 1094.

trict of Columbia, as owner of the ground, liable, where it has not
designated the same as a public playground, for the death of a child
caused by falling down the declivity and over the wall, while at
play thereon in accordance with the custom of the children of the
neighborhood. (Citing *McGraw* v. *District of Columbia,* 3 App. D.
C. 405, 25 L.R.A. 691, and *Sullivan* v. *Huidekoper,* 27 App. D. C. 154,
5 L.R.A.(N.S.) 263, 7 Ann. Cas. 196.)

No. 2615. Submitted February 3, 1914. Decided April 6, 1914.

HEARING on an appeal by the plaintiff from a judgment of
the Supreme Court of the District of Columbia upon a directed
verdict in favor of defendant in an action brought to recover
damages for the alleged negligent killing of plaintiff's intestate.
                                                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment upon a directed verdict
in favor of the defendant, the District of Columbia, appellee
here, in an action by Joseph Hageage, the plaintiff, appellant
here, as administrator of the estate of a five-year-old infant,
Nicholas Hageage, for damages resulting from the alleged neg-
ligence of the defendant in maintaining an alley in this city
with an unguarded retaining wall along one side of it, from
which the child fell while at play in the alley and was killed.

The following facts appear from plaintiff's proof and offer of
proof: On November 20, 1885, Emma McCahill, the owner
of the land comprising the alley in question between Thirty-
fourth and Thirty-fifth streets, N. W., dedicated the same to the
District of Columbia by regularly filing a plat thereof in the
office of the surveyor of the District. Theretofore this land had
been taxed as the property of Emma McCahill, but it was then
dropped from the assessment books and no taxes were there-
after levied, assessed, or collected thereon. The dedication was
conceded by the defendant for the purposes of this case.

The easterly end of the alley, that is the end connecting with
Thirty-fourth street, for a distance of about 20 feet, was on a
grade with the pavement. The surface of the alley then in-

clined upward at an angle of about 45 degrees to a height of about 10 feet. The surface was broken and irregular. The westerly end of the alley was more even, and where it connects with Thirty-fifth street was about the grade of that street. The entire alley was irregular ground, sloping toward the south, and there was no indication of any improvement of it, or that its original surface had ever been disturbed. This surface, at the time of the accident, "was very rough, and composed of rotten rock in all kinds of pieces," and "after rain or any time in freezing weather it crumbles and is in one place low and another place a high hill." There was no evidence that the alley had ever been opened to public travel, or that it was in any condition for such travel. In 1909, after procuring a permit from the District authorities, a Mr. Thomas H. Pickford excavated from M street northwesterly between Thirty-fourth and Thirty-fifth streets to the south edge of the alley, and erected a perpendicular cement wall several feet high along said edge, the top of the wall being about flush with the contiguous portion of the alley. There was no guard rail along the top of this wall.

In the square in which this alley was located and in the surrounding vicinity were a large number of residences, and many children between the ages of three and ten years were accustomed to use the alley as a playground, but it had not been designated as such, nor had the District authorities consented that it be so used. Its condition and the advisability of grading and paving it was brought to the attention of the District authorities, and they replied "that, owing to the large magnitude of the physical work of grading and paving the alley referred to, and the relative insignificance of the need of the same," they would not undertake the work. On February 27, 1911, the Hageage child, while playing in the alley, "slipped on one of the declivities of said alley and fell towards the south edge of said alley and over the side of the alley, and was killed." At the close of plaintiff's proof and offer of proof, the court granted the motion of the defendant for a directed verdict, and the plaintiff appealed.

*Mr. Crandal Mackey* for the appellant.

*Mr. Conrad H. Syme,* Corporation Counsel, and *Mr. Roger J. Whiteford,* Assistant, for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

The first question for determination is whether the District, never having opened this alley as a public alley, was under any obligation to maintain it as such. This obligation does not necessarily follow from the mere fact of dedication and its acceptance by the District. Supposing a canal had crossed the alley, it would hardly be contended that it could have been considered a public thoroughfare until the District had spanned the canal with a bridge and opened the alley for public travel. It usually requires more than a mere dedication or condemnation of land for a public street to make it available as such, and common sense dictates that the District ought not to be held liable for a defect in a street until it has either opened it for travel or treated it as so opened. "The responsibility of the authorities for the condition of a highway begins when they have actually opened it for public travel." Elliott, Roads & Streets, p. 456. "The mere fact of establishing a highway by judicial action does not, of itself, so open it to the public as to render towns liable for accidents that may occur to travelers thereon. After it is thus legally established, it is to be prepared for public use. Labor is to be performed upon it. Bridges are to be built, hills cut down, and valleys filled up; obstructions are to be removed, and rough places to be made smooth." *Blaisdell* v. *Portland,* 39 Me. 113. In *Hunter* v. *Weston,* 111 Mo. 176, 17 L.R.A. 633, 19 S. W. 1098, it was ruled that an alley not open for public use or used in fact as an alley, and which exists only on a recorded plat of a city addition, is not within ordinances prohibiting unguarded excavations near an alley or other public place or vehicles therein.

The case of *Benton* v. *St. Louis,* 217 Mo. 687, 129 Am. St. Rep. 561, 118 S. W. 418, relied upon by the plaintiff, is easily

distinguishable from this case. That was an action for the death of a child who was drowned in a hole adjacent to a defective sidewalk, and, there being evidence warranting the finding that the city had treated and recognized the *locus* as a public street actually in use, the city was held liable. This ruling was in accord with that of the Supreme Court of the United States in *New York* v. *Sheffield,* 4 Wall. 189, 18 L. ed. 416, where it was ruled that if the authorities of a city or town have treated a place as a public street, taking charge of it and regulating it as they do other streets, they cannot, when sued for an injury occasioned by the defective condition of that street, defend themselves by alleging want of authority in establishing the street. So, too, in *Manchester* v. *Ericsson,* 105 U. S. 347, 26 L. ed. 1099, it was ruled that, in a suit against the city for damages sustained by a party who fell at night from a causeway erected within its limits by an incorporated bridge company, but which was not provided with a proper guard or protection, although it extended from the company's bridge to the level of the street, the question of fact as to whether the city treated the causeway as a street, and assumed such control of the *locus in quo* as to incur liability for its condition, was for the determination of the jury. See also *Newport News* v. *Scott,* 103 Va. 794, 50 S. E. 266. The alley in question was a mere paper street, had not been opened to public travel, had not been used by the public as a street, and hence the District authorities were under no obligation to maintain it as a public street.

But this alley was land belonging to the District of Columbia, and the question therefore arises whether the District owed a duty to the plaintiff's intestate to maintain it in such a condition that he, in common with children of the neighborhood, would not be liable to injury if he resorted to it. In the *Turntable Case (Sioux City & P. R. Co.* v. *Stout,* 17 Wall. 657, 21 L. ed. 745), recovery was permitted where a child had been injured in playing with a turntable on the premises of the railroad company, the turntable being unlocked and unguarded and in such a condition that injury was almost certain to follow if children played with it. The court found that this device was a dangerous machine, attractive to children, and that the injury

which occurred was one that might have been anticipated by
the company. In the *Slack Pit Case* (*Union P. R. Co.* v. *Mc-
Donald*, 152 U. S. 262, 38 L. ed. 434, 14 Sup. Ct. Rep. 619),
the railroad operated a coal mine within a few hundred feet of
its depot and a small village. Between the shaft house of the
mine and the depot were the tracks of the railroad. A narrow,
rough, and uneven footpath extended from the depot building
over the railroad tracks and close to the slack pit. This pit
contained a large quantity of coal slack that was constantly
burning underneath, the surface, however, containing a covering
of ashes sufficient in depth to conceal the fire underneath. The
plaintiff, a lad of about twelve years, was visiting in the village
and went to the mine along the path previously mentioned, was
frightened by mine boys, started back along the path, slipped
and fell into the burning slack and was severely injured. Un-
der a law of the State of Colorado such slack pits were required
to be fenced, and a violation of the law was punishable by a fine,
and, in addition, the violator was declared liable to any party
injured. The court, however, proceeded to treat the question
upon general grounds, and in its opinion said: "In the present
case there was no express invitation to the plaintiff to come up-
on the premises of the railroad company for any purpose. But
if the company left its slack pit without a fence around it,
or anything to give warning of its really dangerous condition,
and knew or had reason to believe that it was in a place where
it would attract the interest or curiosity of passers-by, can the
plaintiff, a boy of tender years, be regarded as a mere tres-
passer, for whose safety and protection while on the premises in
question, against the unseen danger referred to, the railroad
company was under no duty or obligation whatever to make
provision?" Later on in the opinion the court said: "The
slightest regard for the safety of these children would have
suggested that they were in danger from being so near a pit,
beneath the surface of which was concealed (except when snow,
wind, or rain prevailed) a mass of burning coals into which a
child might accidently fall and be burned to death. Under all
the circumstances the railroad company ought not to be heard
to say that the plaintiff, a mere lad, moved by curiosity to see

the mine in the vicinity of the slack pit, was a trespasser, to whom it owed no duty, or for whose protection it was under no obligation to make provision."

A review of these two cases shows that they differ materially from the case under consideration. The turntable, as expressly found by the court, was a dangerous machine, and its dangerous condition, while apparent to the railroad company, was not apparent to children, to whom it was an attractive plaything. The company should have known if it left this machine unlocked and unguarded in a place where children were almost certain to play with it, serious results would almost inevitably follow. In other words, this machine was inherently dangerous, and the circumstances were such that it was incumbent upon the railroad company to use reasonable precautions to protect thoughtless children from being injured by it. Its disregard for the safety of the children it knew to frequent the vicinity was so great that it was not permitted to escape liability for the almost inevitable consequences by interposing a plea that it owed them no duty. This reasoning applies with even greater force to the slack pit case, for there the defendant was violating a law of the State by maintaining a place that was a menace to human life, and under conditions amounting to the grossest negligence.

In the present case there was nothing inherently dangerous either in this alley or in the fact that the embankment wall along its southern side was not guarded. Children had played there for a considerable time apparently without mishap. Conditions were observable by all. If the District is to be held liable in this case, then it necessarily follows that it is its duty to fence every pond and every stream, and make absolutely safe every foot of ground under its jurisdiction, when children are liable to resort thereto. In *McGraw* v. *District of Columbia,* 3 App. D. C. 405, 25 L.R.A. 691, which was an action for the death of a boy at a bathing beach in the District prior to the opening of the beach for public use, the court ruled that the District was not liable. In *Sullivan* v. *Huidekoper,* 27 App. D. C. 154, 5 L.R.A. (N.S.) 263, 7 Ann. Cas. 196, it was ruled that no duty rests upon the owner of real estate on whose land

is an open and unfenced pond, to keep his land safe for a tres-passer, even though that trespasser is a child of tender years. The court said: "The danger of children who go to swim in ponds and other bodies of water is remote, and accidents are comparatively of rare occurrence. To hold an owner of real estate upon which there is a body of water, liable for the accidents that may happen to children while trespassing thereon, would be to place upon them an unfair burden." In *McCabe* v. *American Woolen Co.* 124 Fed. 283, affirmed in 65 C. C. A. 59, 132 Fed. 1006, it was held that the defendant was not liable for maintaining an unguarded mill trench having precipitous banks, near the house of the father of the child who fell in and was drowned. The court distinguished the case from the *Turntable* and *Slack Pit Cases,* saying: "The case at bar, however, is essentially distinct in this particular. This canal was permanent, open, and plain to view,—as much so as though it had been a natural stream,—and suggests nothing whatever which would change the relations of the parties from what they would have been had it been a brook or a river. * * * We think, therefore, that this canal was an object of such a character that, both from the reason of the thing and the customs of the community, the defendant was entitled to assume that the plaintiff's natural guardians would protect him from any dangers attached thereto, as they easily could and ought to have done." *Savannah, F. & W. R. Co.* v. *Beavers,* 113 Ga. 398, 54 L.R.A. 314, 39 S. E. 82, 10 Am. Neg. Rep. 8, was an action for the death of a child, the death resulting from a fall into an unguarded excavation upon defendant's premises. The court, after an exhaustive review of the authorities, ruled against recovery, distinguishing the case from the *Turntable* and *Slack Pit Cases.* In *Loftus* v. *Dehail,* 133 Cal. 214, 65 Pac. 379, the action was by an infant of seven years of age to recover damages for injuries sustained in falling into a cellar of defendant's situated on a vacant lot in the city of Los Angeles. Recovery was denied. See also *Gillespie* v. *McGowan,* 100 Pa. 144, 45 Am. Rep. 365; *Ratte* v. *Dawson,* 50 Minn. 450, 52 N. W. 965; *Bottum* v. *Hawks,* 84 Vt. 370, 35 L.R.A.(N.S.) 440, 79 Atl. 858, Ann. Cas. 1913A, 1025, 3 N. C. C. A. 186,

The alley in the present case had not been designated as a public playground, and hence the children who frequented it were not there upon the invitation of the District authorities, either express or implied. The District, therefore, was under no greater duty to those children when there than when upon any other portion of the public domain not specially set apart for them. It had not left in a place known to be frequented by children an attractive and inherently dangerous machine that was just as certain to draw a child into peril as poisoned meat placed by the roadside would be likely to attract a neighbor's dog; nor had it been guilty of another act of gross negligence by maintaining in a public place a concealed danger amounting to a nuisance. It had merely deferred putting a guard rail along land dedicated for an alley until the convenience of the public required the alley to be improved and opened. If there is to be any limit to the liability of the District in such cases, we must hold that no liability has been shown in this case.

Judgment affirmed, with costs. *Affirmed.*