Summers, J.
The Railroad Company is not answerable in damages for the loss of the little boy’s leg unless his injury was caused by the neglect by the railroad company of some duty it owed to the boy, and the Water Works Company is not answerable in damages for the death of the little girl unless she lost her life because the employes of the company neglected to observe some duty that it owed to her.
*240 Whether any and what duty rested upon the defendant is a question of law, whether the defendant performed or observed that duty, or neglected to do so, and plaintiff in consequence was injured, is a question of fact.
The duty of the owner or occupier of land to persons coming upon it depends somewhat upon whether they are there by his invitation or permission. To invited persons it is his duty to exercise reasonable care for their safety; to licensees it is his duty to give notice of hidden dangers or traps, while trespassers, that is,- persons entering without permission, assume the risk of injury from the condition of the premises and the duty of the occupier to them is only to be careful not to injure them by bringing force to bear upon them.
The only exception to his non-liability to persons entering without his permission, was where he made a change in the condition of his land, adjacent to a public highway, so as to endanger the safety of travellers who might, without fault on their part, accidentally stray from the highway.
So the law stood until the decision in The Sioux City & Pac. R. R. Co. v. Stout, reported in 17 Wallace, 657, decided in 1874. In that case a little boy, about six years of age, lost his foot while playing with a turntable, on the unenclosed lands of the railroad company, in company with two other boys, and a judgment for $7,500 was sustained. This case was tried before Dillon, circuit judge, and Dundy, district judge. The circuit judge charged the jury as follows: “This action rests, and rests alone, upon the alleged *241 negligence of the defendant, and this negligence consists, as alleged, in not keeping the turntable guarded or locked. Negligence is the omission to do something which a reasonable prudent man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do; or doing something which a prudent or reasonable man would not do, under all the circumstances surrounding the particular transaction under judicial investigation.
“If the turntable, in the manner it was constructed and left, was not dangerous in its nature, then of course the defendants would not be guilty of any negligence in not locking or guarding it. But even if it was dangerous in its nature in some situations, you áre further to consider whether, situated as it was on the defendant’s property, in a small town, and distant or somewhat remote from habitations, the defendants are guilty of negligence in not anticipating or foreseeing, if left unlocked or unguarded, that injuries to the children of the place would be likely to or would probably ensue.
“The machine in question is part of the defendant’s road, and was lawfully constructed where it was. If the railroad company did not know, and had no good reason to suppose, that children would resort to the turntable to play, or did not know, or had no good reason to suppose, that if they resorted there, they would be likely to get injured thereby, then you cannot find a verdict against them.
“But if the defendant did know, or had good reason to believe, under the circumstances of the *242 case, the children of the place would resort to the turntable to play, and that if they did they would or might be injured, then, if they took no means to keep the children away, and no means to prevent accidents, they would be guilty of negligence, and would be answerable for damages caused to children by such negligence.”
This charge, in the supreme court, was held to be a correct statement of the law. In many of the states the courts have followed the lead of the Supreme Court of the United States and a multitude of cases has arisen seeking to make the owners of property liable for injuries to children from accidents happening upon their premises, on the ground that the owner was negligent in not anticipating that children would be likely to be attracted to the place and to be injured. The multitude of circumstances under which the owner of property would be liable for injuries to children, and the very serious burden that was, in consequence, being placed on the owners of property, were very probably not for-seen in the Stout case. But the cases became so numerous as to occasion very careful examination of the principles laid down in that case. In many jurisdictions the correctness of the conclusion there reached is denied, and in some of the states where that decision was followed the courts have repudiated the doctrine, in others they have limited it, and in still others they have declined to follow the doctrine in any case excepting a turntable case.
To even enumerate the cases in which the so-called turntable doctrine has been applied or *243 denied, would require so much space as to preclude its attempt.
The following are turntable cases in which the doctrine is applied.
United States. — Sioux City & Pac. R. R. Co. v. Stout, 17 Wall., 657.
Minnesota. — Keffe v. Milwaukee & St. P. Ry. Co., 21 Minn., 207; O’Malley, Admx., v. St. P., Minneapolis & Manitoba Ry. Co., 43 Minn., 289.
Nebraska. — A. & N. R. R. Co. v. Bailey, Admr., 11 Neb., 332.
Missouri. — Koons v. St. Louis & Iron Mountain R. R. Co., 65 Mo., 592; Nagel v. Missouri Pac. Ry. Co., 75 Mo., 653.
Kansas. — Kansas Central Ry. Co. v. Fitzsimmons, 22 Kan., 686; Union Pacific Ry. Co. v. Dunden, 37 Kan., 1.
Iowa. — Edgington v. Burlington C. R. & N. Ry. Co., 116 Ia., 410.
California. — Barrett v. Southern Pacific Co., 91 Cal., 296.
Washington. — Ilwaco Ry. & Navigation Co. v. Hedrick, Admr., 1 Wash., 446.
Tennessee. — Bates v. Railway Co., 90 Tenn., 36. But railway company is not required to fasten the turntable any more securely than necessary to keep it securely in place.
Illinois. — St. Louis, V. & T. H. R. R. Co. v. Bell, 81 Ill., 76. Reversed judgment on the sole ground that the company was not negligent in view of the' isolated position of the turntable.
South Carolina. — Bridger v. A. & S. R. R. Co., 25 S. Car., 24.
*244 Georgia. — Ferguson v. Columbus & Rome Ry., 75 Ga., 637.
Texas. — Evansich v. G. C. & S. F. Ry. Co., 57 Tex., 126; G. C. & S. F. Ry. Co. v. McWhirter, 77 Tex., 356; Ft. Worth & Denver City Ry. Co. v. Measles, 81 Tex., 474.
To these should be added Union Pacific Ry. Co. v. McDonald, 152 U. S., 262. This was not a turntable case, but a case in which a boy was injured in a slack pit of the railroad company. However, the doctrine of the turntable cases was re-examined and approved.
In the following cases, in which the injuries were received at a turntable, the doctrine of the turntable cases is denied.
New Hampshire. — Frost v. Eastern R. R. Co., 64 N. H., 220.
Massachusetts. — Daniels v. N. Y. & N. E. R. R. Co., 154 Mass., 349.
New York. — Walsh v. Fitchburg R. R. Co., 145 N. Y., 301.
New Jersey. — Turess v. N. Y., Susq. & West. R. Co., 61 N. J. L., 314; D. L. & W. R. R. Co. v. Reich, 61 N. J. L., 635.
Virginia. — Walker v. Potomac, etc., R. Co., 105 Va., 226.
In the following cases, where the injuries were not sustained at a turntable, the doctrine of the turntable cases is denied.
New Jersey. — Friedman v. Snare & Triest Co., 71 N. J. L., 605.
Michigan. — Ryan v. Towar, 128 Mich., 463.
Rhode Island. — Paolino v. McKendall, 24 R. I., 432.
*245 W. Virginia. — Ritz v. City of Wheeling, 45 W. Va. 262; Uthermohler v. Bogg’s Run Co., 50 W. Va., 457.
In the following cases, in which children were injured, but not while • playing with a turntable, liability is denied in courts that have adopted the turntable doctrine in cases where the injuries were received at a turntable.
Minnesota. — Emerson v. Peteler, 35 Minn., 481; Twist v. Railroad Co., 39 Minn., 164; Haesley, Admr., v. Railroad Co., 46 Minn., 233; Dehanitz v. City of St. Paul, 73 Minn., 385; Ratte v. Dawson, 50 Minn., 450; Stendal v. Boyd, 67 Minn., 279; Stendal v. Boyd, 73 Minn., 53; Erickson v. Grt. Northern Ry. Co., 82 Minn., 60.
Georgia. — Savannah, F. & W. R. Co. v. Beavers, 113 Ga. 398; O’Connor v. Brucker, 117 Ga., 451.
Nebraska. — Richards, Admx., v. Connell, 45 Neb., 467; City of Omaha v. Bowman, Admx., 52 Neb., 293.
California. — Peters v. Bowman, 115 Cal., 345.
Missouri. — Overholt v. Vieths, 93 Mo., 422; Barney v. Railroad Co., 126 Mo., 372; Witte v. Stifel, 126 Mo., 295; Arnold v. City of St. Louis, 152 Mo., 173.
Kansas. — Railroad Co. v. Bockoven, Admr., 53 Kan., 279.
Texas. — Dobbins v. M. K. & T. Ry. Co., 91 Tex. 60.
Tennessee. — Stone Co. v. Pugh, 115 Tenn., 688.
Washington. — Clark v. Northern Pac. Ry. Co., 29 Wash., 139; Curtis v. Tenino Stone Quarries, 37 Wash., 355; Harris v. Cowles, 38 Wash., 331.
*246 The principles involved have been carefully considered in so many cases that it would be fruitless as well as presumptious to undertake to add anything to the discussion.
Tn the recent case, Friedman v. Snare & Triest Co., 71 N. J. L., 605, where the court denied liability for injuries to a little girl, between four and five years of age, who had been injured while playing upon some iron girders, that fell upon her while playing upon them in the street, where they had been placed by an abutting property owner for use in the construction of a building, the English cases that are cited as supporting the decision in Railroad Company v. Stout, supra, are reviewed. And in Ryan v. Towar, 128 Mich., 463, many of the cases, both English and American are examined, and the doctrine of the turntable cases is expressly disapproved. In that case, the defendant owned a small pump-house located upon ground owned by a railroad company. In the house was a small, overshot water-wheel. The plaintiff, a girl about twelve or thirteen years of age, was in the habit of passing this pump-house on the way to school with her brothers and sisters; going across lots through the field, because it was nearer. For some time previous to the time of the accident, a hole existed in the stone wall of the house enclosing the 'wheel, through which children went to play on the wheel. On the day in question, the brothers of plaintiff, on the way from school, crawled through this hole, and, mounting the wheel, were able by their weight to turn the wheel part way round and back. A younger sister, aged eight years, got *247 caught between the wheel and the wheel pit. The plaintiff heard her screams, and went through the hole to her succor, and aided in rescuing her, and was herself injured. In the opinion, Hooker, J., after reviewing a number of turntable cases says: “Here we have the doctrine of the turntable cases carried to its natural and logical result. We have only to add that every man who leaves a wheelbarrow, or a lawnmower or a spade upon his lawn; a rake, with its sharp teeth pointing upward, upon the. ground or leaning against a fence; a bed of mortar prepared for use in his new house; a wagon in his barn-yard, upon which children may climb, and from which they may fall; or who turns in his lot a kicking horse or a cow with calf,- — does so at the risk of having the question of his negligence left to a sympathetic jury. How far does the rule go? Must his barn door, and the usual apertures through which the accumulations of the stables are thrown, be kept locked and fastened, lest twelve-year-old boys get in and be hurt by the animals, or by climbing into the haymow and falling from beams? May a man keep a ladder, or a grindstone, or a scythe, or a plough, or a reaper, without danger of being called upon to reward trespassing children, whose parents owe and may be presumed to perform the duty of restraint? Does the new rule go .still further, and make it. necessary for a man to fence his gravel-pit or quarry? And, if so, will an ordinary fence do, in view of the known propensity and ability of boys to climb fences? Can a man nowadays safely own a small lake or fish-pond? and must he guard ravines and *248 precipices upon his land? Such is the evolution of the law, less than thirty years after the decision of Railroad Co. v. Stout, when, with due deference, we think ■ some of the courts left the solid ground of the rule that trespassers cannot recover for injuries received, and due merely to negligence of the persons trespassed upon.”
Of the case of Powers v. Harlow, 53 Mich., 507, in which the opinion is by Judge Cooley, and which is quoted from at some length in Union Pac. Ry. Co. v. McDonald, 152 U. S., 262, as approving the turntable doctrine, he says: “Clearly, this does not adopt the rule of Railroad Co. v. Stout.”
And in conclusion he says: “That a landowner is under no obligation to use care to protect a trespasser is a broad and until recently, undisputed rule, without exception; liability for injuries sustained by such being limited to cases of intentional or wanton injuries. The rule, with this limitation, is sustained today by the' great weight of authority. It is contended by some law writers, and has been held in some cases, that an exception exists in favor of -children of tender years. The varying reasons given should lead us to doubt the solidity of the foundations upon which these cases rest, especially when none of the reasons are of recognized authority. The law has never before denied the liability of children for trespass because of tender years. On the contrary, it was intimated in Mangan v. Atterton, L. R., Exch., 239, that a four-year-old boy was a trespasser, under the circumstances of that case; and there are numerous cases cited in this opinion where liability is denied upon that, and no other, ground. The *249 assertion that the weight of authority supports the plaintiff’s contention in this case seems to us incorrect. It may be true that, in cases involving turntables, a majority of the cases, which are necessarily few, have followed the case of Railroad Co. v. Stout, supra; but there should be a legal principle underlying the rule laid down in that case, and that principle has been assiduously sought for by some of the courts, without success, as we have seen. Others have asserted different reasons for following it. One gives us to understand that a child is licensed to go wherever he can find that which attracts him; a Texas court has held that children of tender years cannot be trespassers; while other authorities are content to rest their approbation of and adherence to the alleged rule upon the inhumanity of the doctrine that a landowner must not be held responsible for injuries suffered by trespassing children, when by ordinary thoughtfulness and care he could have anticipated and prevented it, and the generic term ‘attractive nuisances’ is applied to the great variety of things which may naturally be expected to allure young children upon private premises. The term ‘attractive nuisance,’ as applied is a new one in the books, and the plausible application of the well-known principle that one must so occupy his own as not to do harm to the rights of others should not be construed to so restrict the use of private lands as to make it necessary to guard and protect trespassers. A man’s home has always been considered his castle, — a domain where, secure from intrusion, he might lawfully do as he would, so long as he did not interfere *250 with the legal rights of others. It has been his duty to guard those licensed to enter, but beyond that he has not been required to go. In our anxiety to prevent personal injuries, we should not go so far as to overturn private rights.”
In Gillespie v. McGowan, 100 Pa. St., 144, Paxson, J., says that the principle upon which it is sought to fasten liability on property owners would, if carried to its logical conclusion, “charge the duty of protection of children upon every member of a community except their parents.” In a very able article on the liability, of landowners to children entering without permission, by Judge Jeremiah Smith, in 11 Harvard Law Review, 349-372, he says: “If those who brought the child into the world are unable by reason of poverty, to provide him a playground, that may afford an argument for the passage of a statute imposing that duty upon the municipality, in which case every land-owner would have to contribute his proportion of the expense. But this is quite another thing from assessing upon a single unfortunate land-owner the entire damages arising from the want of such a playground.”
In some of the cases it is said that Lynch v. Nurdin, 1 Adol. & El., 29, has been overruled or at least disapproved; but in Union Pac. R. Co. v. McDonald, 152 U. S., 262, Mr. Justice Harlan, doubts the correctness of this statement, and refers to an English case in which it has been approved, and we may add that since then it has been followed in Harrold v. Watney (1898), 2 Q. B., 320; and in McDowall v. G. W. Ry. Co. (1902), 1 K. B., 618. However, we do not con *251 sider the case of Lynch v. Nurdin, as authority for the decision in Railroad Co. v. Stout. In Lynch v. Nurdin, the defendant left his horse, and cart unattended in a public street. The plaintiff, a child seven years of age, got upon the cart in play, and another child led the horse on and the plaintiff was thereby thrown down and hurt. The plaintiff recovered. It is to be observed that the horse and cart were left in the street. It was the duty of defendant to use care. The child was rightfully in the street, and the fact that he meddled with the cart was not contributory negligence in one of his age, and it is not properly a case of trespass. In the turntable cases there is neither invitation nor permission, and to ground them on cases like Townsend v. Wathen, 9 East, 277, where dogs were lured to their death by tainted meat, or like Bird v. Holbrook, 4 Bring., 628, where a spring gun was set to shoot trespassers, is to lose sight of the difference between negligence and intentional wrongdoing. The distinction is pointed out in Pointing v. Noakes (1894), 2 Q. B., 281, where the defendant was held not liable for the death of plaintiff's horse, due to the latter's eating from a yew tree, that was wholly on defendant’s land.
In Buch v. Amory Manufacturing Co., 69 N. H., 257, where a boy, eight years of age, unable to speak or understand English, was injured by machinery, in a very able opinion, Carpenter, C. J., says: “Actionable negligence is the neglect of a legal duty. The defendants are not liable unless they owed to the plaintiff a legal duty which they neglected to perform. With purely moral obliga *252 tions the law does not deal. For example, the priest and Levite who passed by on the other side were not, it is supposed, liable at law for the continued suffering of the man who fell among thieves, which they might and morally ought to have prevented or relieved. Suppose A, standing close by a railroad, sees a two-year-old babe on the track and a car approaching. Fie can easily rescue the child with entire safety to himself, and the instincts of humanity require him to do so. If he does not, he may, perhaps justly be styled a ruthless savage and a moral monster; but he is not liable in damages for the child’s injury, or indictable under the statute for its death. P. S., c. 278, -s. 8.
“ Tn dealing with cáses which involve injuries to children, courts * * * have sometimes strangely confounded legal obligation with sentiments that are independent of law.’ Indianapolis v. Emmelman, 108 Ind., 530. Tt is important to bear in mind, in actions for injuries to children, a very simple and fundamental fact, which in this class of cases is sometimes strangely lost sight of, viz., that no action arises without a breach of duty.’ 2 Thomp. Neg., 1183, note 3. ‘No action will lie against a spiteful man, who, seeing another running into danger, merely omits to warn him. To bring the case within the category of actionable negligence some wrongful act must be shown, or a breach of some positive duty; otherwise, a man who allows strangers to roam over his property would be held answerable for not protecting them against any danger they might *253 encounter whilst using the license.’ Gautret, Admx., v. Egerton, L. R. 2 C. P., 371, 375.
“What duties do the owners owe to a trespasser upon their premises? They may eject him, using such force and such only as is necessary for the purpose. They are bound to abstain from any other or further intentional or negligent acts of personal violence, — bound to inflict upon him by means of their own active intervention no injury which by due care they can avoid. They are not bound to warn him against hidden or secret dangers arising from the condition of the premises (Redigan v. Railroad, 135 Mass., 44, 47, 48), or to protect him against any injury that may arise from his own acts or those of other persons. In short, if they do nothing, let him entirely alone, in no manner interfere with him, he can have no cause of action against them for any injury that he may receive. On the contrary, he is liable to them for any damage that he by his unlawful meddling may cause them or their property. What greater or other legal obligation was cast upon these defendants by the circumstance that the plaintiff was (as is assumed) an irresponsible infant ?
“If landowners are not bound to warn an adult trespasser of hidden dangers, — dangers which he by ordinary care cannot discover and, therefore, cannot avoid, — on what ground can it be claimed that they must warn an infant of open and visible dangers which he is unable to appreciate? No legal distinction is perceived between the duties of the owners in one case and the other. The situation of the adult in front of secret dan-' *254 gers which by no degree of care he can discover, and that of the infant incapable of comprehending danger, is in a legal aspect exactly the same. There is no apparent reason for holding that any greater or other duty rests upon the owners in one case than in the other.
“There is a wide difference — a broad gulf— both in reason and' in law, between causing and preventing an injury; between doing by negligence or otherwise a wrong to one’s neighbor, and preventing him from injuring himself; between protecting him against injury by another and guarding him from injury that may accrue to him from the condition of the premises which he has unlawfully invaded. The duty to do no wrong is a legal duty. The duty to protect against wrong is, generally speaking and excepting certain intimate relations in the nature of a trust, a moral obligation only, not recognized or enforced by law. Is a spectator liable if he sees an intelligent man or an unintelligent infant running into danger and does not warn or forcibly restrain him ? What difference does it make whether the' danger is on another’s land, or upon his own, in case the man or infant is not there by his express or implied invitation? If A sees an eight-year-old boy beginning to climb into his garden over a wall stuck with spikes and does not warn him or drive him off, is he liable in damages if the boy meets with injury from the spikes? Degg, Admx., v. Railway Co., 1 H. & N., 773, 777. I see my neighbor’s two-year-old babe in dangerous proximity to the machinery of his windmill in his yard, and easily might, but do not, rescue him. I am *255 not liable in damages to the child for his injuries, nor, if the child is killed, punishable for manslaughter by the common law or under the statute (P. S. c. 278, s. 8), because the child and I are strangers, and I am under no legal duty to protect him. Now suppose I see the same child trespassing in my own yard and meddling in like manner with the dangerous machinery of my own windmill. What additional obligation is cast upon me by reason of the child’s trespass? The mere fact that the child is unable to take care of himself does not impose on me the legal duty of protecting him in one case more than in the other. Upon what principle of law can an infant by coming unlawfully upon my premises impose upon me the legal duty of a guardian? None has been suggested, and we know of none.” The real reason for implying invitation, or declaring a turntable to be a lure, is to escape the imputation of making the law, rather than declaring it. Railroad companies do lock their switches, because unlocked they endanger the property of the company and the lives of its passengers; but, assuming that there is no reason why a switch should be kept locked for safety when not in use, and a turntable should be left unlocked when not in use, endangering the lives of little children, excepting that in the one case there is a pecuniary liability and in the other not, that does not vest the courts with the legislative function to impose the duty upon railroad companies. It is much better that the duty should be. prescribed by the legislature rather than be declared by the courts, for then it may be known in advance of liability, and the *256 courts will be saved the expense and difficulty of explaining to disappointed litigants, in cases based upon a different state of facts but logically requiring the same result, why they are mistaken. Thus, in Ryan v. Towar, 128 Mich., 463, the cases are cited in which it is held that a railroad company does not owe to children the duty to see that they do not jump upon its cars, or to keep its cars in good repair, or the doors shut, or to guard them so that children cannot be injured by loosening the brakes, or not to leave a hand-car near the track, or to keep a lookout for them when trespassing. To which may be added Dicken v. Coal Co., 41 W. Va., 511, in which a recovery was denied for the injury of a little child crippled by a car while on a tram road of a salt company; Clark, Admr., v. Manchester, 62 N. H., 577, where a child of four years was drowned in a reservoir that had once been used by the city, but had been abandoned, the fence removed, though a portion of it yet had water in it, and there was a field nearby where ball playing and other games went on and children were accustomed to play; the child, while passing along a path at the reservoir, fell into it; Grindley, Jr., Admr., v. McKechnie, 163 Mass., 494, where a child went through an opening in a fence, along a path, and fell into a sewer owned by the city; Gay, Admr., v. Railway Co., 159 Mass., 238, where liability was denied to a boy ten years old, who went on a car unlawfully standing in a street and was injured by a recoiling brake not properly fastened; Talty, Admr., v. City of Atlantic, 92 Ia., 135, where a child was injured, while digging sand, *257 a bank caving in upon him; Ratte v. Dawson, 50 Minn., 450, where a child of three years, playing in a pit, in an unguarded vacant lot, was killed by the caving of the bank; and in this case children were attracted by the bank and were accustomed .to play there; Barney v. Railroad Co., 126 Mo., 372, where children went to play in an unfenced railroad yard and one of them, six years of age, was.injured in jumping on a train; Vanderbeck v. Hendry, 34 N. J. L., 467, where defendant owned a lumber yard in a populous part of the city, frequented by children, and a child was injured by the falling of a pile of lumber not in a safe condition; Clark v. City of Richmond, 83 Va., 355, where a child six years of age walked on a wall along the street and fell into a pit; Uthermohlen v. Bogg’s Run Co., 50 W. Va., 457, where a boy seven years of age trespassed upon the property of a coal company and was injured by a pulley and cable used by the company to haul cars from its mines to the tipple; Harbina v. Twin City General Electric Co., 113 N. W. Rep., 586, where a little girl nine years of age, while crossing the unenclosed lands of the defendant, fell into a ditch filled with hot water.
But it is said that the case of Harriman v. Railroad Co., 45 Ohio St., 11, applies the doctrine of the turntable cases and that ever since, for twenty years, the decision in that case has been considered by the profession as committing this court to that doctrine. If true, that would not make the doctrine a rule of property, but would entitle the case only to the same consideration that is given any other considered judgment of the court. The *258 decision in that case did not require the application of the doctrine of the turntable cases, but rests upon long settled principles of law. There, some boys, walking along the tracks of a railroad, found an unexploded torpedo, and when trying to open it, in ignorance of its dangerous character, it exploded and seriously injured one of their number. -The case was disposed of on a demurrer to the petition. The boys were held to be licensees, and being licensees, it was the duty of the company to warn them of the hidden peril, or to use care that they were not injured thereby. In the opinion (31) Williams, J. says: “Hence, where a railroad company has for a long time permitted the public, including children, to travel and pass habitually over its road, at a given point, without objection or hindrance, it should in the operation of its trains, and management of its road, so long as it acquiesces in such use, be held to anticipate the continuance thereof, and is bound to exercise care accordingly, having due regard to such probable use, and proportioned to the probable danger to persons so using its road; and it is negligence for the servants of such company to knowingly interpose any new danger without reasonable precaution against injury therefromIn' the present case, unlike Harriman v. Railroad Company, the facts do not make a case, if not of implied invitation at least one in which the defendant may be said to be estopped to deny permission. Assuming then, but not deciding, that the plaintiff was a licensee, the turntable was not a hidden peril or trap, as those terms are understood in law. The turn *259 table was- not visible from the streets and the boys were not by it attracted or lured onto the railroad company’s property, and the company legally is no more responsible for the injuries received by the boy in meddling with the turntable than it would have been had they been sustained by him in meddling with any other of its appliances.
In the case of Harriman v. Railroad Company, it was not necessary to a determination of the questions presented to determine whether the boy was on the railroad company’s property by 'implied invitation, or by license. It may be, as intimated in the opinion, that the conduct of the company estopped it to deny liability or to assert that the boy was a trespasser; but it was not necessary to go further, for in either case it was the duty of the company not to interpose a trap or pitfall, or a new danger, without notice or the exercise of due care. Upon this ground the judgment in that case may be vindicated, but we are not satisfied that what is there said upon the subject of invitation and license can be.
In Sturgis v. Railway Co., 72 Mich., 619, Campbell, J., says: “It is impracticable to keep off trespassers from an open track, and all who go upon it do so at their own risk of such dangers as are incidént directly to such use.” And in Hargreaves v. Deacon, Admr., 25 Mich., 1, a case in which a boy was drowned in an uncovered cistern on private premises, he says: “Cases are quite numerous in which the same questions have arisen in this case, and we have found none which hold that an accident from negligence, on private *260 premises, can be made the ground of damages, unless the party injured has been .induced to come by personal invitation, or by employment which brings him there, or by resorting there as to a place of business or of general resort held out as open to customers or others whose lawful occasions may lead them to visit there. We have found no support for any rule which would protect those who go where .they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience, in no way connected with business or other relations with the occupant.” And in Ryan v. Towar, 128 Mich., 463, it is expressly ruled that: “An invitation or a license to cross the premises of another cannot be predicated on the mere fact that no steps have been taken to interfere with such practice.” And that: “There is no difference between children and adults as to the circumstances that will warrant the inference of an invitation or a license to enter upon another’s premises.”
In Turess v. N. Y. S. & W. R. R. Co., 61 N. J. L., 314, Magie, C. J., says: “Invitation which creates such a relation may be express, as when the owner or occupier of land, by words, invites another to come on it or make use of it or something thereon; or it may be implied, as when such owner or occupier, by acts or conduct, leads another to believe that the land or something thereon was intended to be used as he uses them, and that such use is not only acquiesced in by the owner or occupier, but is in accordance with the intention or design for which the way or place or thing was adapted and prepared or allowed *261 to be used. This definition, originally given in Sweeny v. Old Colony & Newport R. R. Co., 10 Allen, 368, was approved and adopted by our court of errors. Phillips v. Library Co., ubi supra.
“It will be observed that, in the case of an implied invitation, the relation is imposed upon the owner or occupier of land only when he has done something which justifies one who enters upon the land and makes use of it or something upon it in believing that he intended such use to be made; and he who makes such use can claim the relation only when he is justified by the acts or conduct of the owner or occupier in believing that such use was intended. And entry and use by such invitation are thus distinguished from entry and use by mere permission.” And in D. L. & W. R. R. Co. v. Reich, 61 N. J. L., 635, in the court of errors and appeals, Gummere, J., says: “The viciousness of the reasoning which fixes liability upon the landowner because the child is attracted, lies in the assumption that what operates as a temptation to a person of immature mind, is, in effect, an invitation. Such an assumption is not warranted. As was said by Mr. Justice Holmes, in Holbrook v. Aldrich, 168 Mass., 16, ‘temptation is not always invitation; as the common law is understood by the most competent authorities, it does not excuse a trespass because there is a temptation to commit it, or hold property owners bound to contemplate the infraction of property rights because the temptation to untrained minds to infringe them might have been foreseen.' ”
*262 Swarts v. The Akron Water Works Co.
This case owes its existence to the doctrine of the turntable cases and might be disposed of without further consideration rtpon the ruling in the preceding case, but, since it is illustrative of the consequences of adopting the turntable doctrine, it may excuse an extention of this already too lengthy opinion. Counsel for plaintiff say: “A great deal was said in the argument below, and doubtless will be said here, in regard to the so-called 'turntable cases’; the insistence that the doctrine of that so-called class of cases shall not be extended has at last reached the point of demanding that a real turntable shall be shown in any case as the best and only evidence that the principle is to be applied.
''We are contending not for a name but for a principle. We cannot produce at the bar a turntable, but if the evidence in this record tends to show that the defendant maintained an 'attractive danger,’ a corresponding obligation arose to reasonably safeguard it against the consequences to be apprehended from it to children who might be attracted by and to it.
. “The doctrine thus allowed and recognized by this court as applicable in a proper case, we expect will be adhered to in any case falling within the principle, whether the instrument of danger be a turntable or a reservoir of water.” And again, “It must be confessed here that the case from which the above quotation is made is a 'turntable’ case, and that we are unable to make profert of a turntable in.open court; nor can we produce a *263 torpedo to make our position square with Harriman v. Railroad Co.; but our controversy is careless of names and deals with principles alone. The particular principle for which we are quarreling,— and we venture to restate it at the risk of being thought tedious, father than leave any room for doubt as to where we stand, — is this: ‘Where the owner of dangerous premises knows or should know that children so young as to be ignorant of the danger will resort to such premises, he is bound to take all reasonable precautions to keep them from the premises, or to protect them from the dangerous condition of the premises/ and this equally whether the danger lurks in a machine or invites approach to a body of water; and that the question of whether the duty thus cast upon the owner has been discharged is one of fact in this case.”
In the very able article in 11 Harvard Law Review, 349, 434, Judge Jeremiah Smith, reviews all of the cases, and reaches the conclusion that the doctrine of the turntable cases is not sound. He regards the opinion in Keffe v. Milwaukee, etc., Ry. Co., 21 Minn., 207, as the ablest in support of that doctrine, and it may be, therefore, interesting to note, that in the subsequent case, Stendal v. Boyd, 73 Minn., 53, that court, by its chief justice, in a case where liability is denied' for the drowning of a little boy in a dangerous excavation filled with water, on a city lot, saj^s: “The doctrine of the turntable cases is an exception to the rule of non-liability of a landowner for accidents from visible causes to trespassers on his premises. If the exception is to be extended to this case, then the rule of non-liability as to *264 trespassers must be abrogated as to children, and every owner of property must at his peril make his premises child-proof. If the owner must guard an artificial pond on his premises, so as to prevent injury to children who may be attracted to. it, he must, on the same principle^ guard a natural pond; and, if the latter, why not a brook or creek, for all water is equally alluring to children? If he must fence in. his stone quarry after it fills with water, so that children cannot reach it,— a well-nigh impossible task, — why should he not be required to do it before, for a stone quarry, with its steep and irregular sides, might well be an attractive and dangerous place to children? It would seem that there is no middle ground, and that the doctrine of the turntable cases ought to be limited to cases of attractive and dangerous machinery.” And in conclusion he says: “Upon the undisputed facts in this case, we hold that plaintiff cannot recover, for the reason and upon the ground that a landowner is not bound to fence or otherwise guard an open excavation or pond, natural or artificial, on his land, so as to prevent injury to children coming thereon without right or invitation, express or implied, although they are induced so to do by the alluring attractiveness of such excavation or pond.” In Erickson v. Grt. Northern Ry. Co,, 82 Minn., 60, liability was denied in a case where a child four years of age was attracted by a fire on the unfenced right of way of the railway company near the public street, and while playing about the fire was burned so that she died. Start, C. J., in that case, says: “The manifest trend of all the decisions of this court is to *265 limit its application to. attractive and dangerous machinery, and to other similar cases where the danger is latent. We are not prepared to say that cases may not arise outside of this classification to which the doctrine ought to be’extended, but we do hold that as a general rule the doctrine of the turntable cases must be limited to cases of attractive and dangerous machinery, and to other similar cases where the danger is latent. This rule may not be strictly logical, but it is a necessary one, unless landowners are to be made insurers of the safety of children when trespassing upon their premises.” In Mattson v. Minnesota, etc., R. R. Co., 95 Minn., 477, the doctrine was extended to a case in which the defendant had left exposed and unguarded on its premises a large quantity of dynamite which was found by the plaintiff’s children, and in an explosion of which one of them was killed and the other permanently injured. In Moran v. Pullman Palace Car Co., 134 Mo., 641, liability is denied for the death by drowning of a boy nine years of age in a pond which was created by excavations in quarrying rock. Liability is also denied in Overhott v. Vieths, 93 Mo., 422, where a boy eight years of age was drowned in a pond on a lot in the city of St. Louis. In Peters v. Bowman, 115 Cal., 345, liability is denied for the drowning of a boy eleven years of age, in a pond on a city lot. In Richards, Admx., v. Connell, 45 Neb., 467, liability is denied in the case of the drowning of an infant child in a pond on land in the vicinity of a public school. In Hargreaves v. Deacon, 25 Mich., 1, where a child fell into an. uncovered cistern, and was drowned, liability was denied. *266 In Klix, Admr., v. Nieman, 68 Wis., 271, liability is denied in a case where a child nine years of age was drowned in an unfenced pond on a lot in the city of Milwaukee. In Gillespie v. McGowan, 100 Pa. St., 144, liability was denied in a case where a child eight years of age fell into an abandoned and unguarded cistern or well. And in Ritz v. City of Wheeling, 45 W. Va., 262, liability was denied in a case where a child less than five years of age was drowned in a reservoir maintained by the city to furnish water for public use. In the opinion, Brannon, C. J., says: “There can be no negligence charged upon a person unless he rests under a duty to the person complaining of damage at his hands; for if there is no duty violated, though there may be grave damage befalling the complaining party, he has no ground of action. It is a case denominated in law as cdamnum absque injuria,’ — damage done, but without violation of a right in the injured party; a misfortune unaccompanied • by a breach of duty by the party inflicting the injury. Sherm. & R. Neg., sec. 8. The reservoir and the land containing it were the private property of the city, used, not as a park or place of public resort or common, but only, for reservoir purposes. The child was a trespasser, if you can say a child can be a trespasser. It was a trespasser in legal sense; that is, it was on this property without right. The city was not bound to watch it. It could be liable to it only for willful or wanton injury.”
In this court, in Ann Arbor Railroad Co. v. Kinz, 68 Ohio St., 210, the company' owned an unfenced common in the city of Toledo. The *267 plaintiff, a boy eleven years of age, was attracted to the common by a game of ball, and while there engaged with some other boys in playing about a bank ten feet in height, he was injured by the falling of the bank, and it was held that the railroad company was not liable. In L. S. & M. S. Ry. Co. v. Liidtke, 69 Ohio St., 384, liability was denied where a boy, six years of age, strayed onto the right of way of the railroad company in the city of Sandusky, and was injured by a passing train, by which he was attracted, and when trying to touch a passing car. It was held that the company was not liable. In The C. H. & D. Ry. Co. v. Alter, 64 Ohio St., 183, footmen with the knowledge of the company used its station platform ánd tracks as a route to the village, and the plaintiff intending so to use the platform and tracks set out for the. village about a half mile distant, but he did not, as was the custom, leave the platform before reaching the end of it and walk along the track, but continued along the platform, and in the dark, stepped off the end of it and was injured. It was held, that he was not invited by the company to use its premises, but that its use was merely permissive and that he assumed the risk. In Pittsburg, Ft. Wayne & Chicago Ry. Co. v. Bingham, Admx., 29 Ohio St., 364, it is held: “A railroad company is not liable for an injury to a person resulting from its failure to exercise ordinary skill and care in the erection or maintenance of its station-house, where, at the time of receiving the injury, such person was at such station-house by mere permission and sufferance, and not for the puropse of transacting any *268 business with the company or its agents, or on any business connected with the operation of the road.”
We may very appropriately conclude in the words of Allen, J., in Clark, Admr., v. Manchester, 62 N. H., 577: “The excavation for a reservoir was not made and filled with water for a trap, but for a lawful use by the defendants on their own land. The averment of license and invitation to the child to go there is one of argument by inference from the facts stated, and the facts positively averred do not warrant and support the inference. The fact that children went to the reservoir pit from curiosity or for pleasure, without objection of the defendants, was not an invitation or license to go there. The child was not upon the land by invitation, nor under circumstances which made it the duty of the defendants to protect him. ITe was there to gratify his curiosity, or for mere pleasure, and the defendants owed him no special duty. It was not a case of setting a trap for the children, nor one of wantonly and knowingly leading them into danger and this one into destruction. It was the ordinary case of a landowner managing, within the bounds of his own land, his own property in his own way for his own use and benefit, and though in doing this he might find occasion to construct reservoirs, provide fish-ponds, plant and cultivate fruit-trees, erect and maintain useful structures, instruments, and machinery, all of which are alluring, attractive, and dangerous to children, yet it could not be claimed that he must constantly guard these things against the approach of persons coming *269 without license or invitation, or suffer in damages for any injury they might receive. The rule that the owner of land may manage it in his own way for his own benefit, and owes no duty to those who come upon it for no business purpose, but without license express or implied, it too well established to need further comment, or to Warrant a departure from it.”
In the case of Railroad Company v. Harvey,. the judgments of the circuit court and of the court of common pleas are reversed and the petition is dismissed; and in the case of Swarts v. The Akron Water Works Company, the judgment of the circuit court is affirmed.

Judgment in No. p8po reversed.

Judgment in No. 10114 affirmed.

Shauck, C. J., Crew and Davis, JJ., concur in No. 9830.
Shauck, C. J., Price, Crew, Spear and Davis, JJ., concur in No. 10114.