## Leon Ratte vs. William Dawson.

Decided July 13, 1892.

**Lot Owner not Negligent.**

> Where a child of tender years was taken by an older sister, to whose care it was intrusted, to vacant residence lots in a city, for recreation and pleasure, and was accidentally knocked down and killed by the caving in of an embankment, caused by excavations for sand, and which had been left unfenced, *held*, that the landowner was not liable in damages, and that he owed no duty to persons coming upon the premises without his invitation to protect them from danger from excavations thereon.

Appeal by plaintiff, Leon Ratte, administrator of the estate of Eva Ratte, deceased, from an order of the District Court of Ramsey county, *Brill*, J., made September 7, 1891, denying a new trial of the action.

*Butts & Jaques*, for appellant.

The administrator brings this action to recover for the death on September 14, 1890, of his intestate, an infant girl two years and ten months old, killed upon defendant's lot in the city of St. Paul, near the corner of Rice and Winter streets. She was in the charge of her elder sisters, who were attracted by several piles of cornelian and gravel stones upon defendant's lot. For the purpose of gathering them, they wheeled this child in its carriage along a well-beaten roadway leading from the sidewalk to defendant's lot. There they began picking up these cornelians. While so doing, an embankment, which had been left undermined for at least a week, suddenly fell down and killed the child. There was no protection or guard around this dangerous place, nor was any notice of the danger given to the children. They were unaware of danger, and were there for the first time. This bank was in a densely populated portion of the city. The child's parents knew nothing of this bank, or that the children were going there.

At the close of plaintiff's case the trial court dismissed the action. Defendant owed a duty of care to intestate and failed to ex-

ercise it; that is, he was negligent. Whether in this particular case a proper degree of care had been used was the question for the jury. *Gunderson* v. *Northwestern Elevator Co.,* 47 Minn. 161; *O'Malley* v. *St. Paul, M. & M. Ry. Co.,* 43 Minn. 289; *Jones* v. *Nichols,* 46 Ark. 207; *Hydraulic Works Co.* v. *Orr,* 83 Pa. St. 332; *Beck* v. *Carter,* 68 N. Y. 283; *Emerson* v. *Peteler,* 35 Minn. 481; *Bransom* v. *Labrot,* 81 Ky. 638; *Ingalls* v. *Adams Express Co.,* 44 Minn. 128; *Haesley* v. *Winona & St. Peter R. Co.,* 46 Minn. 233; *Hepfel* v. *St. Paul, M. & M. Ry. Co.,* 49 Minn. 263.

The case at bar is every way stronger than any of the turntable cases, because the bank was not set in motion by the children, but fell independently of them. Therefore, the trespass was not the proximate cause of the injury. *Scoville* v. *Hannibal & St. J. R. Co.,* 81 Mo. 434; *Welsh* v. *Jackson County Horse Ry. Co.,* 81 Mo. 466; *Radley* v. *London & N. W. Ry. Co.,* L. R. 1 App. Cas. 754.

*Stevens, O'Brien & Glenn,* for respondent.

It may be safely said, we think, that in this case we have reached the high water mark in negligence; further than this it cannot go until the golden period of speculative litigation is reached, when, in the epigrammatic language of this court the duty of the protection of children would be charged upon every member of the community except the parents of the children themselves. *Twist* v. *Winona & St. Peter R. Co.,* 39 Minn. 164.

The only connection the defendant had with the accident was that he owned the premises upon which it happened. It was a kind of no man's land, where sand pirates stole sand under the plea that it improved the property. The sand bank where this accident occurred was about four and a half feet high and had been left by the sand haulers the night previous to the accident, with a straight up and down face.

It is evident from this statement that the question whether or not the premises owned by the defendant were dangerous in such a way as to subject the defendant to a liability for negligence does not properly arise, because no knowledge upon the part of the defendant of the alleged dangerous condition is shown, nor is it shown that such

a condition was produced by any one acting under the defendant's authority. There is not a word of evidence that brings home to the defendant knowledge of any of the essential facts. But on the contrary it appears affirmatively that he had no knowledge of the facts, and during a great portion of the time, was in Europe.

In *Gillespie* v. *McGowan*, 100 Pa. St. 144, the court, among other things, said: "It is a part of a boy's nature to trespass, especially where there is tempting fruit, yet I never heard that it was the duty of the owner of a fruit tree to cut it down because a boy trespasser may possibly fall from its branches; yet the principle contended for would bring us to that absurdity if carried to its logical conclusion." *Clark* v. *City of Richmond*, 83 Va. 355; *Galligan* v. *Metacomet Mfg. Co.*, 143 Mass. 527; *Klix* v. *Nieman*, 68 Wis. 271; *Armstrong* v. *Medbury*, 67 Mich. 250; *Emerson* v. *Peteler*, 35 Minn. 481; *Trask* v. *Shotwell*, 41 Minn. 66.

VANDERBURGH, J.    The evidence failed to make a case in behalf of the plaintiff, and the action was rightly dismissed. The defendant is the owner of several unoccupied residence lots in the city of St. Paul, on which divers persons with his consent, express or implied, before the accident or injury complained of here, had entered and made excavations for building sand. The premises were open and unfenced, and the pits or excavations made from time to time on the land were unprotected by railing or otherwise. Children residing in the neighborhood were accustomed to visit the place and play there, but it does not appear that the defendant's attention had been called to this fact, though he knew that the excavation for sand had been going on for some considerable time. On Sunday afternoon, September 14, 1890, plaintiff's intestate, an infant of the age of three years, who was in charge of an older sister, about fifteen years of age, and in company with two other sisters, was taken to the premises in question for recreation and pleasure. While amusing themselves there, chiefly in looking for "carnelians," the infant, who was suffered to go into or near one of the excavations, was knocked down by falling earth from an overhanging embankment, and killed.

The excavations were sufficiently removed from the street so that

they were not dangerous to persons passing on the sidewalk. The parties were clearly trespassers. They were not on the premises by plaintiff's invitation, or for any lawful purpose. He owed them no duty to fence or guard his premises, to prevent them from entering and exposing themselves to danger. There was nothing in the nature of the work going on upon the land, nor anything kept or used thereon, which can be said to have been especially inviting or attractive to children, or calculated to entrap them into danger, so as to bring the case within the rule established in the "Turntable Cases." *McAlpin* v. *Powell*, 70 N. Y. 133, 134.

There is nothing to take the case out of the general rule that, where the owner of land, in the exercise of his lawful dominion over it, makes an excavation thereon, so far from the street that a person coming onto the land without his invitation, and falling into it, would be a trespasser before reaching it, such owner is not liable to an action for the injury sustained. *Gillespie* v. *McGowan*, 100 Pa. St. 147; *McAlpin* v. *Powell, supra; Severy* v. *Nickerson*, 120 Mass. 306; Add. Torts, §§ 621, 622; Bigelow, Torts, 699. The young girl who had charge of the deceased was *sui juris*, and responsible for the care of the latter.

It is sufficient, however, to base the decision in the case upon the absence of negligence on the part of the defendant.

The maxim, *sic utere tuo*, etc., has no application to such a case. It refers to acts the effect of which extends beyond the limits of the property, and to neighbors who do not interfere with it or enter upon it. If the rule were otherwise, a landowner could not sink a well or dig a ditch or open a stone quarry on his own land, except at the risk of being made liable for consequential damages, which would unreasonably restrict its enjoyment. *Gillespie* v. *McGowan, supra.*

Order affirmed.

(Opinion published 52 N. W. Rep. 965.)