ARTHUR T. BOTTUM'S ADMR. *v.* WILLIAM E. HAWKS.

May Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed May 8, 1911.

*Negligence—Dangerous Premises—Duty of Owner—Invitation—Infants—"Attractive Nuisances"—Open Bulkheads—Contributory Negligence—Proximate Cause.*

Your negligence resulting in injury to another gives him no cause of action unless that negligence is also the breach of a legal duty that you owe him.

As a general rule, a landowner owes no duty to trespassers or licensees, whether children or adults, to keep the premises in proper condition.

In the absence of "attractive" dangers and actual or implied knowledge of the presence of a child on the premises, a landowner owes a technical trespasser or licensee of tender years no greater duty than if he were an adult.

The maxim *sic utere tuo,* etc. applies only for the protection of legal rights, and only to results that extend beyond the limits of the owner's property.

An invitation by an owner to come upon his premises carries with it some measure of assurance of safety, which the owner must make good, but without an invitation, express or implied, no duty of active care on the part of the owner arises.

Such invitation is implied whenever one makes such use of another's premises, or something found thereon, as the owner intends he shall, or such as he is reasonably justified in understanding the owner intended.

As affecting the liability of the owner of premises for injury to a person thereon, neither silence, acquiescence, nor permission is sufficient to amount to an invitation to come upon the premises, whether the person entering be an adult or an infant.

An infant's age, intelligence, and want of experience should be considered in determining whether he has been guilty of contributory negligence.

The owner of an open bulkhead that was attractive to children, in consequence of which they were frequently led to play about it, and which was maintained near a much frequented street and near a path used by school children, is not liable for the death of a five year old boy who, while playing about it, fell into the water and was drowned.

In an action for negligence resulting in the death of a child, the declaration need not negative the contributory negligence of the parents, where, if any existed, it was remote and not proximate.

CASE for negligence. Heard on a separate general demurrer to each of the three counts of the declaration, at the December Term, 1909, Bennington County, *Butler,* J., presiding. Demurrers sustained and the declaration adjudged insufficient. The opinion fully states the case.

*Holden & Healey,* and *F. C. Archibald* for the plaintiff.

*Batchelder & Bates* and *T. W. Moloney* for the defendant.

POWERS, J. The plaintiff excepts to the judgment of the county court sustaining general demurrers to his declaration and the two counts thereof. There is no essential difference between these counts, and, so far as need be stated, the following facts are alleged:

The plaintiff's intestate was a five year old boy. The defendant owned a mill in the village of Bennington and conducted water to it through an underground conduit. In this conduit and on the premises of certain third persons, he owned and maintained an open bulkhead about three feet in diameter, built substantially flush with the surrounding surface of the ground, save for a curb of ten inch boards. This bulkhead was near one of the much-frequented streets of the village, and close by on the same premises was a building in which a private

school, attended by many children of the intestate's age, was maintained. There was a path near the bulkhead which was, and had been for a long time, habitually used by the intestate and other children—both from the private school and the public school of the village. The grounds around about were much frequented by all these children who resorted thereto for amusement. There were no barriers either between the street and the bulkhead, or between the grounds of the private school and the bulkhead. The structure was attractive to the intestate and the other children, and they were thereby frequently led to play about it. All of these things were known and permitted by the defendant, and the owners of the land. On the day of the accident, the intestate, with other children of tender years from the schools mentioned, was passing along the path, and being attracted by the bulkhead stopped to play about it, and while so at play, the intestate fell into the water, and was swept into the conduit and drowned.

All will agree that this open, unguarded bulkhead, located as it was, was a serious menace to the children of the community; that the fact it was so likely to cause accidents of such dire consequences laid a heavy moral obligation upon the owner so to cover or guard it as to make impossible such a disaster as befell the intestate. But, though suffering it to remain unguarded was an act of deliberate carelessness, it does not necessarily follow that this action will lie. Negligence and actionable negligence are distinguishable terms; carelessness does not always involve liability. Before liability attaches a duty must arise,—a duty on the part of the party charged toward the party injured. So our discussion begins with the question, Did the defendant owe the intestate a duty, and if so was it the duty of active care? If the answer to both branches of this question is affirmative, then, so far as the main question is concerned, liability is stated in this declaration.

We may assume without special consideration that the defendant owed the intestate the duty of protection from injury caused by force negligently brought to bear upon him. This is generally conceded and is the rule of our own cases, *Lindsay Admr.* v. *C. P. R. R. Co.*, 68 Vt. 556, 35 Atl. 513, and *Seymour* v. *C. V. R. R. Co.*, 69 Vt. 555, 38 Atl. 236, wherein the parties

were injured, not by reason of the condition of the premises, but by the negligence of the defendants arising after they had entered upon the defendants' properties. But, on account of this distinction, these cases are not authorities here. As said by (now) Mr. Justice Lurton in *Felton* v. *Aubrey*, 74 Fed. 350, 20 C. C. A. 436, "It seems to us that many of the American cases which we have cited fail to draw the proper distinction between the liability of an owner of premises to persons who sustain injuries as a result of the mere condition of the premises and those who come to harm by reason of the subsequent conduct of the licensor inconsistent with the safety of persons permitted to go upon the premises and whom he was bound to anticipate might avail themselves of his license. This seems to be sharply emphasized in the case of *Corby* v. *Hill*, (4 C. B. N. S. 556) and is a distinction which should not be overlooked."

Did the defendant owe the intestate the duty of active care? It is to be observed that this is not the case of one who digs a pit on his own land but so near the highway that a traveler by inadvertence steps off into it,—like *Barnes* v. *Ward*, 67 E. C. L. 392 and *Sanders* v. *Reister*, (Dak.) 46 N. W. 680; nor is this the case of injuries intentionally inflicted, like the spring gun case, *Bird* v. *Holbrook*, 13 E. C. L. 667, and the baited trap case, *Townsend* v. *Wathen*, 9 East 277; nor, on the other hand, is it the case of injuries arising from natural conditions. This declaration is intended to, and does predicate the right to recover squarely upon the doctrine sometimes called the attractive nuisance doctrine,—sometimes the doctrine of the turntable cases. It would be impossible to select from the books a subject on which there is a wider divergence of judicial opinion than the one here involved. There is much to be said on both sides of the question. Indeed so much has already been said that we cannot hope to add anything new to the discussion.

As a general rule, an owner is under no legal obligation to trespassers or licensees to keep his premises or property in proper condition; and this rule applies with equal force to children and adults. This last statement, it must be admitted, would not in all jurisdictions go unchallenged. But the authorities generally agree to it, even those which accept the doctrine of the turntable cases, and we feel safe in asserting that in the

absence of the elements of "attractive" dangers and knowledge, actual or implied, of the presence of the child, the tender years of a technical trespasser or licensee will not raise a legal duty on the part of the land-owner where none otherwise exists.

Two of our own cases should be referred to in this connection, —*Kennedy* v. *Morgan,* 57 Vt. 46 and *Fay* v. *Kent,* 55 Vt. 557. In the former case it was sought to hold one who was engaged in tearing down a school house situate in a public park for injuries negligently inflicted on a small boy who was watching the work. In the latter case, it was alleged that the defendant had dug a pit in the highway near a school house and negligently left the excavation with an overhanging bank; that a small boy walked into it and was injured by the bank caving onto him. Liability was denied in both cases,—a result which could not have been reached if infancy alone creates a duty. If the added elements of "attractiveness" and knowledge, actual or implied, of the injured child's presence, both of which are alleged to exist in the case in hand, are sufficient to raise a duty where none before existed, it must be upon some legal principle, discovery of which ought to be comparatively easy. Yet it is a matter of much significance that though this principle has been diligently sought, the courts which accept the doctrine reach widely divergent conclusions regarding it. Some put it on the ground of implied intention, relying on the spring gun case and the trap case hereinbefore referred to. These, apparently, reason along a line analagous to the rule familiar in criminal law that one will be held to have intended the natural consequences of his acts. The Federal Supreme Court gives countenance to this view, for it cites *Bird* v. *Holbrook,* in *Sioux City & Pacific R. R.* v. *Stout,* 84 U. S. 657, 21 L. Ed. 745, and *Townsend* v. *Wathen,* in *Union Pacific R. R. Co.* v. *McDonald,* (U. S.) 38 L. Ed. 434, 14 Sup. Ct. 619. But the ground is obviously fictitious and the courts which adopt it destroy the fundamental distinction between negligent and intentional injuries. It was said by the late Justice Peckham when he delivered the opinion in *Walsh* v. *Fitchburgh R. R. Co.,* (N. Y.) 27 L. R. A. 724, 39 N. E. 1068, 45 Am. St. Rep. 615, that the difference between *Bird* v. *Holbrook* and a turntable case "is so plain as to require no discussion." "The failure to observe this distinction,"

says Judge Denman in *Dobbins* v. *Misso. etc. Ry. Co.*, (Tex.)
66 Am. St. Rep. 856, 41 S. W. 62, 38 L. R. A. 573, "has led to
much confusion."

Some say the rule is but an application of the maxim *sic
utere*, etc. But the maxim applies to all alike and makes
no distinction in favor of children. It applies only to results
which extend beyond the limits of the owner's property. *Ratt*
v. *Dawson*, 50 Minn. 450, 52 N. W. 965; *Sav. Flor. & West.
Ry. Co.* v. *Beavers*, (Ga.) 54 L. R. A. 320, 39 S. E. 82; *Walker*
v. *Potomac, F. & P. R. R. Co.*, 105 Va. 226, 8 A. & E. Ann. Cas.
862, 53 S. E. 113, 4 L. R. A. (N. S.) 80, 115 Am. St. Rep. 871.
The maxim applies for the protection of legal rights only.
It does not apply to one without right. In *White* v. *Twitchell*,
25 Vt. 620, 60 Am. Dec. 294, the plaintiff had appropriated the
defendant's pole and used it in making a staging. The de-
fendant, without notice to the plaintiff, went and took it away.
Afterwards the plaintiff went upon the staging, and by reason
of the removal of the pole or bar, the staging fell and the plaintiff
was injured. "*Sic utere tuo* does not apply," says Judge Bennett,
"for the reason that the plaintiff had no right in the use of the
bar, to injure." Others predicate the doctrine on the ground
of implied invitation, saying with Mr. Justice Young in *Keffe*
v. *M. & St. P. R. R. Co.*, 21 Minn. 207, 18 Am. Rep. 393, that
what an express invitation is to an adult, the temptation of an
attractive plaything is to a child of tender years. Although
this is the most plausible ground on which the doctrine can be
predicated, it is in our judgment unsound. Its infirmity lies
in the fact that it is only another way of basing the liability on
the defendant's intent to injure. For invitation, though implied
merely, cannot logically or fairly be said to exist, where no
intent to invite exists. In *Holbrook* v. *Aldrich*, 168 Mass.
15, 36 L. R. A. 493, 46 N. E. 115, 60 Am. St. Rep. 364, it was
held that a storekeeper was not liable for injuries to a seven
year old child who put her hand up the spout of a coffee grinder
while in the store with her father to make a purchase. In the
course of the opinion it was said by Mr. Justice Holmes, "Temp-
tation is not always invitation. As the common law is under-
stood by the most competent authorities, it does not excuse
a trespass because there is a temptation to commit it, or hold

property owners bound to contemplate the infraction of property right, because the temptation to untrained minds to infringe them might have been foreseen."

Some say that the doctrine under consideration is an exception to the general rule—and some, with less accuracy of phrase, say it is in the nature of an exception,—born of necessity and adopted in the interests of humanity.

The plaintiff says—and it is usually so stated—that the origin of the doctrine is found in *Lynch* v. *Nurdin*, 41 E. C. L. 422. In that case the defendant's servant left a horse and cart unattended in a busy street. The plaintiff, a child of tender years, climbed upon the cart in play, and another child struck the horse and caused it to start, whereby the plaintiff was thrown off and injured. The case must, we think, be considered in the light of the former case of *Illedge* v. *Goodwin*, 24 E. C. L. 520, cited therein. In that case a horse and cart of the defendant were left unattended in the street and a passer-by struck the horse, causing it to back against and break the plaintiff's window. The Chief Justice of the Common Pleas said: "If a man chooses to leave a cart standing in the street, he must take the risk of any mischief that may be done." Strangely enough, the question whether the defendant owed the plaintiff any duty was not argued in *Lynch* v. *Nurdin*. Neither the doctrine of attractive nuisances nor anything like it was relied upon. The defence made by counsel was mainly if not entirely contributory negligence. The learned Chief Justice of the Queen's Bench, Lord Denman, however, alludes to the fact that the child was a wrong-doer, though he does not very clearly distinguish the legal effect of this from contributory negligence. It is sometimes asserted that the doctrine of attractive nuisances cannot find support in this case, and certainly it was not very clearly if at all presented by counsel. Yet we regard the decision as an authority in support of the doctrine. Some uncertainty, however, seems to have existed in England as to the standing of the case, and much inconsistency appears in the English cases since decided (a review of which is found in *Friedman* v. *Snare & Triest Co.*, 71 N. J. L. 605, 61 Atl. 401, 70 L. R. A. 147, 108 Am. St. Rep. 764), but all doubt is now set at rest by the recent case of *Cooke* v. *Midland, G. N. Ry. of Ireland*, L. R. App. Cas.

(1909) 229, wherein the Lynch case is expressly approved and its doctrine applied to a turntable case.

It is to be observed that in *Lynch* v. *Nurdin*, the team was left standing in a public street,—a place where the defendant's rights were qualified by those of the plaintiff. It might well be that in these circumstances the defendant owed the plaintiff the duty of active care. Just as in *Robinson* v. *Cone*, 22 Vt. 213, 54 Am. Dec. 67, the defendant owed the plaintiff the duty of avoiding running over him as he was sliding down hill in the highway, it might logically be said that knowing that children were in or likely to be in the street,—and that rightfully—the defendant in the Lynch case was bound to take notice of their mischievous tendencies, and therefore owed the plaintiff the duty of active care to protect him from the consequences of his own lack of judgment in meddling with the team. This would be within the reason of the rule stated in *Eaton* v. *R. R. Co.*, 129 Mass. 364 as follows: "Where there are different public easements to be enjoyed by two parties at the same time and in the same place, each must use his privilege with due care so as not to injure the other." The foregoing distinction between *Lynch* v. *Nurdin* and the turntable cases has been pointed out in *W. & L. E. R. R. Co.* v. *Harvey*, 77 Oh. St. 235, 83 N. E. 66, 19 L. R. A. (N. S.) 1136, 122 Am. St. Rep. 503, *Walsh* v. *Fitchburgh R. R. Co.*, (N. Y.) 27 L. R. A. 724, 39 N. E. 1068, 45 Am. St. Rep. 615, and some other cases, and been denied with some spirit in *Edgington* v. *B. C. R. & N. R. R. Co.*, (Ia.) 57 L. R. A. 561, 90 N. W. 95. Whatever view we may take of *Lynch* v. *Nurdin*, it can not be approved in this State without doing violence to *Kennedy* v. *Morgan* and *Fay* v. *Kent, supra*. In the former case, the decision goes upon the ground that the declaration did not show that the defendant owed the child a duty, because it was not alleged that he knew the child was there. Neither did it appear in *Lynch* v. *Nurdin* that the defendant or his servant in charge of the team knew that the plaintiff was there. But it will be suggested that in the circumstances, they ought to have known of the child's presence. Perhaps so. But the ground for constructive knowledge of the child's presence existed in *Kennedy* v. *Morgan*, for the building which was being torn down was in an open public park, —where

children might rightfully be,—and it would be at least a jury question whether the defendant in the circumstances ought not to have known of the child's presence. Surely a standing team is no more of an attraction to children than the work of tearing down a building,—which as we all know is usually attended with a sizable audience of full grown men. Again, the excavation in *Fay* v. *Kent* was in the highway, and the holding is that the averments did not show a duty toward the plaintiff's intestate because he did not invite him into the sand pit and his right to a proper use of the highway was not infringed. Can it be said that a standing team is more alluring to a boy than a "cave" made by digging into a bank, and left with an overhanging top? It is suggested that in *Fay* v. *Kent* there was no allegation that the pit was attractive to children. Nor was such fact specifically alleged or proved in *Lynch* v. *Nurdin*. The court, not the pleader, said the team attracted the boy. In *Fay* v. *Kent* the pit was sufficiently described to have enabled the court to say as much as was said in *Lynch* v. *Nurdin*, had it been so minded; its location was specified as in the highway, 15 rods from a school house attended by young scholars who were accustomed to pass over the highway and bank where the pit was dug.

The rule under consideration was first applied to a turntable case in *Sioux City & P. R. Co.* v. *Stout*, 17 Wall. 657, 21 L. Ed. 745. The reasoning of the court in this case is far from satisfactory and is not nearly so strong a presentation of the affirmative of the question as is to be found in some of the decisions of the state courts adopting the rule—notably the opinion of Judge Young in *Keffe* v. *M. & St. P. R.*, 21 Minn. 207, 18 Am. Rep. 393. The Stout case was first tried before Judge Dundey of the United States circuit court, District of Nebraska, resulting in a disagreement. The court charged the jury that if the turn-table was a heavy and dangerous machine, and in a public place where children were in the habit of going to play upon it with the knowledge of defendant or its servants, (an instruction, by the way, which is hardly consistent with *Mangan* v. *Atterton*, 4 Hurl. & C., 388) the company would be under obligation to guard against injuries to such children. The next trial was before Judge Dillon, who charged the jury

to much the same effect, and this charge was sustained by the Supreme Court. The proposition that the plaintiff though a trespasser was not barred of a recovery was put upon the authority of *Lynch* v. *Nurdin, Bird* v. *Holbrook, Birge* v. *Gardner,* 19 Conn. 507, 50 Am. Dec. 261, and *Daley* v. *R. R. Co.,* 26 Conn. 591, 68 Am. Dec. 413. We have sufficiently discussed *Lynch* v. *Nurdin. Bird* v. *Holbrook* was, as we have seen, a case of intentional injury and has no bearing whatever upon the attractive nuisance doctrine. Nor did *Birge* v. *Gardner* involve the doctrine of attractive nuisances. A boy seven years of age was injured by the fall of a heavy gate which had been erected by the defendant on his own land but on or near the line of a certain public passway or lane from the highway to the house in which the plaintiff lived. As the boy passed along the lane, he took hold of the gate and shook it, causing it to fall upon him. The case turned on the question of contributory negligence. The court held the defendant liable on the ground of gross negligence. The case might well have been classed with those wherein a ditch is dug too near the highway, already referred to; and it is so classed in *Daniels* v. *N. Y. & N. E. R. R. Co.,* 154 Mass. 349, 13 L. R. A. 248, 28 N. E. 283, 26 Am. St. Rep. 253, and note to *Barnes* v. *Ward,* 67 E. C. L. 392. Indeed the Connecticut court says of this case in *Fitzmaurice* v. *Conn. Ry. & L. Co.,* 78 Conn. 406, 62 Atl. 620, 3 L. R. A. (N. S.) 149, 112 Am. St. Rep. 159. "Evidently the gross negligence of which he might have been found guilty was the careless leaving of this insecurely fastened and heavy gate, where he had reason to know it was liable to fall upon persons who might be lawfully using the public passway." That *Birge* v. *Gardner* was not to be taken as an endorsement of the attractive nuisance doctrine probably sufficiently appears in the Fitzmaurice case, but in *Wilmot* v. *McPadden,* 79 Conn. 367, 19 L. R. A. (N. S.) 1101, 65 Atl. 157, the court declares that the attractive nuisance doctrine was not involved in *Birge* v. *Gardner* and that it was then dealing with the question for the first time.

   *Daley* v. *Norwich & W. R. R. Co.* is like our *Lindsay* v. *C. P. R. R. Co.*—a child while playing on the track was injured

by a passing train. The doctrine of attractive nuisances was not involved.

Four other cases are cited in the Stout case:— *Loomis* v. *Terry*, 17 Wend. 496, 31 Am. Dec. 306, which was the case of a boy hunter injured by a ferocious dog; *Wright* v. *Ramscot*, 1 Saund. 83, in which the defendant unnecessarily killed a dog which was fighting with his own; *Johnson* v. *Patterson*, 14 Conn. 1, 35 Am. Dec. 96 wherein the defendant poisoned the plaintiff's hens, and *State* v. *Moore*, 31 Conn. 479, 83 Am. Dec. 159,—a spring gun case.

None of these cases, then, support the conclusion of the Stout case except the Lynch case,—which we have seen affords support more by accident than design.

Notwithstanding the unstable foundation upon which the Stout case stands it was expressly approved and adhered to in *U. P. R. R. Co.* v. *McDonald*, 152 U. S. 262, 38 L. Ed. 434, 14 Sup. Ct. 619, and must, doubtless, be accepted as the law of that Court. There is this, however, to be said about the McDonald case: The doctrine of attractive nuisances was not involved in it, except as the Court went out of its way to consider it. In the court below no allusion was made to any such doctrine, so far as the reported case shows. The facts were these: The Union Pacific Railway Company operated a coal mine near its depot in the village of Erie, Col. Between the shaft house and the depot ran a path much used by employees and visitors. Along this path was a slack pit beneath the surface of which the slack was burning though nothing appeared on the surface to indicate it. A small boy, ignorant of the presence of fire in the slack pit, visited the mine and, while watching the workmen lowering a pair of mules down the shaft, was frightened by some boys and ran toward the village along the path and in attempting to pass some persons who were on the bank near the edge of the pit, he fell into the burning slack and was injured. A statute required the slack pit to be fenced, and provided a penalty for a non-compliance with its terms. It also provided that a person who failed to comply with it should "be further liable to any party injured thereby in the amount of the actual injury sustained." The court charged the jury as follows:— "The law made it the duty of the defendant to fence its slack

pit, and if it did not do so, and as a result of its negligence in failing to comply with its legal duty in this regard the plaintiff received the injuries complained of, the defendant is liable. Persons are entitled to the protection which would accrue from a compliance with the statute, and the plaintiff had a right to presume the space between the railroad tracks was not a burning slack pit because it was not fenced." The Court then proceeded to take up the question of contributory negligence. There is not a suggestion anywhere in the case that the boy was attracted by the slack pit or that it had anything to do with his presence there. To be sure Mr. Justice Harlan says "But if the company left its slack pit without a fence around it or anything to give warning of its really dangerous condition, and knew or had reason to believe that it was in a place where it would attract the interest or curiosity of passers-by, can the plaintiff, a boy of tender years, be regarded as a mere trespasser, for whose safety and protection while on the premises in question, against the unseen danger referred to, the railroad company was under no duty or obligation to make provision?" The trouble with this statement is that the slack pit did not "attract the interest or curiosity" of the boy. The case does not belong in the class with the turntable case, but rather with those which hold that statutory provisions are available to licensees, or those that hold that an owner shall not knowingly let a mere licensee run into a hidden peril. The point really decided was that the instruction above quoted was a correct statement of the law. In sustaining this instruction, the Court says: "The only question that could arise upon this part of the case is whether the court should have instructed the jury—as, in effect, it did—that the failure of the company to put a fence around the slack pit, as required by the statute of Colorado, was negligence of which the plaintiff could complain in this action for personal injuries sustained by him. Primarily, the statute was intended for the protection of cattle and horses. But it was not, for that reason, wholly inapplicable to the present case upon the issue as to negligence * * * * The non-performance by the railroad company of the duty imposed by statute of putting a fence around its slack pit, was a breach of its duty to the public, and, therefore, evidence of negligence, for which it was liable in this case, if the injuries

in question were, in a substantial sense, the result of such violation of duty."

Any allusion to the doctrine of the Stout case or *Lynch* v. *Nurdin* was entirely outside the case. The late Mr. Justice Brewer saw with clearer vision, for when the case was before him on a demurrer to the declaration—which was apparently then predicated upon negligence at common law—he pointed out the difference between the McDonald case and the Stout case above referred to. *McDonald* v. *U. P. Ry. Co.*, 35 Fed. 38. We close our consideration of the McDonald case with the criticism of Putnam, J., in *McCabe* v. *Am. Woolen Co.*, 124 Fed. 283; "The latter case (McDonald case) reaffirms *Railroad* v. *Stout;* but it may as well be laid out of the way, because it is difficult to determine whether it was adjudged on the authority of *Railroad Co.* v. *Stout* or on the old rule with reference to pitfalls and other dangerous traps. The burning slack complained of in *Railway Co.* v. *McDonald* was indeed an unguarded pitfall of a concealed, dangerous and most reprehensible character. The opinion is a very long one, and it is not to be presumed that it received throughout the concurrence of all the Justices of the Supreme Court or even a majority of them. It falls within that class of opinions as to which what is not absolutely necessary to the conclusion must be regarded as *dicta.*"

It must be admitted that a majority of the cases adopt the rule of the Stout case. The list includes *Ala. G. L. R. Co.* v. *Crocker*, 131 Ala. 584, 31 So. 561; *Barrett* v. *So. Pac. Co. (Cal.)* 25 Am. St. Rep. 186, 27 Pac. 666; *Ferguson* v. *Columbus & Rome Ry.*, 77 Ga. 102; *Chicago & E. R. Co.* v. *Fox*, (Ind.) 79 N. E. 81; *Edgerton* v. *Burlington, Cedar Rapids & N. Ry. Co.*, (Ia.) 57 L. R. A. 561, 90 N. W. 95; *Kansas C. R. Co.* v. *Fitzsimmons*, 22 Kan. 686, 31 Am. Rep. 203; *Brown* v. *C. & O. Ry. Co.*, (Ky.) 25 L. R. A. (N. S.) 717, 123 S. W. 298; *Keffe* v. *M. & St. P. R. Co.*, 21 Minn. 207, 18 Am. Rep. 393; *Nagel* v. *Mo. P. R. Co.*, 75 Mo. 653, 42 Am. Rep. 418; *C. B. & Q. R. Co.* v. *Krayenbuhl*, (Neb.) 59 L. R. A. 920, 91 N. W. 880; *Bridge* v. *Ashville & S. R. Co.*, 25 S. C. 24; *Ilwaco R. & Nav. Co.* v. *Hedrick*, (Wash.) 22 Am. St. Rep. 169, 25 Pac. 335; *Ft. W. & D. C. R. Co.* v. *Robertson*, (Tex.) 14 L. R. A. 781, 16 S. W. 1093.

On the other hand, the rule is utterly rejected in *Wilmot*

v. *McPadden*, 79 Conn. 367, 65 Atl. 157, 19 L. R. A. (N. S.)
1101; *Daniels* v. *N. Y. & N. E. R. Co.*, (Mass.) 13 L. R. A.
248, 28 N. E. 283, 26 Am. St. Rep. 253; *Ryan* v. *Tower*, 128 Mich.
463, 87 N. W. 644, 55 L. R. A. 310; 92 Am. St. Rep. 481; *Frost*
v. *Eastern R. R.*, 64 N. H. 220, 9 Atl. 790, 10 Am. St. Rep. 396;
*Del. L. & W. R. Co.* v. *Reich*, (N. J.) 40 Atl. 682, 41 L. R. A.
831, 68 Am. St. Rep. 727; *Walsh* v. *Fitchburg R. Co.*, 145 N. Y.
301, 39 N. E. 1068, 27 L. R. A. 724, 45 Am. St. Rep. 615; *Wheeling
& L. E. R. Co.* v. *Harvey*, 77 Oh. St. 235, 83 N. E. 66, 122 Am.
St. Rep. 503, 19 L. R. A. (N. S.) 1136; *Thompson* v. *B. & O.
R. Co.*, 218 Pa. St. 444, 67 Atl. 768, 19 L. R. A. (N. S.) 1162,
120 Am. St. Rep. 897; *Pailino* v. *McKendall*, (R. I.) 53 Atl.
268, 60 L. R. A. 133, 96 Am. St. Rep. 736; *Walker's Admr.*
v. *Potomac etc. R. Co.*, (Va.) 4 L. R. A. (N. S.) 80, 115 Am. St.
Rep. 871; *Ritz* v. *Wheeling*, (W. Va.) 43 L. R. A. 148, 31 S. E. 993.

That there is a strong tendency to limit rather than extend
the doctrine is admitted on all sides. This tendency is sufficient-
ly shown by the following cases from the states wherein the
turntable doctrine is approved: *Savannah F. & W. R. Co.*
v. *Beavers*, 113 Ga. 398, 39 S. E. 82, 54 L. R. A. 314, which
was the case of a five year old boy drowned in a pool formed in an
excavation on the premises of the plaintiff in error; *Stendal* v.
*Boyd*, 73 Minn. 53, 75 N. W. 735, 42 L. R. A. 288, 72 Am. St.
Rep. 597, which was the case of a boy, not quite five years old,
drowned in a quarry hole on the defendant's premises; *Moran*
v. *Pullman Co.*, 134 Mo. 641, 36 S. W. 659, 33 L. R. A. 755,
56 Am. St. Rep. 543, which was the case of a nine year old boy
drowned in a quarry hole; *Robbins* v. *Mo. Kan. & Tex. Ry. Co.*
(Tex.) 38 L. R. A. 573, 41 S. W. 62, 66 Am. St. Rep. 856, which
was the case of a three year old child drowned in a pool of water
on defendant's right of way; *Richards* v. *Connell*, 45 Neb. 467,
63 N. W. 915, which was the case of a ten year old boy drowned
in a pond allowed to form on the defendant's premises; *Mayfield
W. & L. Co.* v. *Webb's Admr.*, 129 Ky. 395, 111 S. W. 712,
18 L. R. A. (N. S.) 179, 130 Am. St. Rep. 469, which was the
case of an eleven year old boy killed while playing on a telephone
guy wire; *Harris* v. *Cowles*, 38 Wash. 331, 107 Am. St. Rep.
847, 80 Pac. 537, which was the case of a child of tender years
injured while playing with a revolving door; *Peters* v. *Bowman*,

115 Cal. 345, 47 Pac. 113, 56 Am. St. Rep. 106, which was the case of an eleven year old boy drowned in a pond of surface water which was allowed to stand on defendant's lot.

Other cases like *Brown* v. *Salt Lake City*, 33 Utah 222, 93 Pac. 570, 14 L. R. A. (N. S.) 619, 126 Am. St. Rep. 828; *Pekin* v. *McMahon*, 154 Ill. 141, 39 N. E. 484, 45 Am. St. Rep. 114, 27 L. R. A. 206, *Indianapolis Water Co.* v. *Harold*, (Ind. App.) 79 N. E. 542, and *Price* v. *Atchison Water Co.*, 58 Kan. 551, 50 Pac. 450, 62 Am. St. Rep. 625, with much more consistency, apply the doctrine to the cases of open conduits, ditches and water holes and hold the land owner liable.

It is plain that the authorities cannot be ,regarded as controlling; and it seems to us, from a patient consideration of the whole subject in the light of all the cases at hand, that it is impossible to justify the doctrine on common law principles.

To keep within the established principles of the common law the question of liability in cases of this kind should be made to turn on the presence or absence of an invitation on the part of the owner. A naked trespasser or bare licensee enters for purposes of his own; he acts for his own benefit or convenience, and the owner gains nothing. But if invited, one enters not alone from motives of his own uncontributed to by act of the owner, but is induced, in some measure, by the conduct of the latter. The owner, in contemplation of law, gains something from the arrangement, though his advantage need not be a pecuniary one. · The invitation carries with it some measure of assurance of safety, which the owner must make good, by the exercise of active care if necessary. Without an' invitation, express or implied, no duty of active care arises. Such invitation is implied whenever one makes such use of another's premises or something found thereon as the owner intends he shall, or such as he is reasonably justified in understanding the owner intended. *Sweeney* v. *Old Colony R. R. Co.*, 10 Allen 368, 87 Am. Dec. 644; *Turess* v. *N. Y. etc. R. R. Co.*, 61 N. J. L. 314, 40 Atl. 614. Neither silence, acquiescence, nor permission, however, standing alone, is sufficient to establish an invitation. A license may thus be created, but not an invitation. The infancy of the party injured does not change the situation. He enters as a trespasser, licensee, or invited person according

to the same circumstances which control in the case of an adult. When the question of his contributory negligence arises, his age, intelligence and want of experience are to be considered. And when the owner's duty toward him is established, these factors must be taken account of in determining whether the owner's conduct measures up to the legal standard.

That an invitation is necessary to the establishment of a duty of active care in cases of this class, is, as we have seen, recognized in the Keffe case, which, it is generally admitted, contains the strongest presentation of the arguments in support of the doctrine under discussion. Such cases (wrongly we think) find such invitation in the attractiveness of the object causing the injury.

Two New Jersey cases well illustrate the circumstances in which an invitation will and will not be implied.

In *D. L. & W. R. R. Co.* v. *Trantwein,* 52 N. J. L. 175, 19 Atl. 178, 7 L. R. A. 435, 19 Am. St. Rep. 442, the company was held liable to a passenger who left the train and was injured on the way to a stairway leading to the street. The stairway was built by private persons for their convenience in reaching the station. But it was connected with the station by a graveled walk, and was apparently a way provided as a means of access to the station. Here is an invitation, for it is apparent that the woman injured was using the way as she had a right to understand the company intended it to be used.

On the other hand, in *Devoe* v. *N. Y. O. & W. Ry. Co.,* 63 N. J. L. 276, 43 Atl. 899, liability was denied where a child was killed in the following circumstances: The tracks of the defendant's railroad opposite its station were protected by a fence, and some of the residents along there constructed a stile over this fence which allowed them to go directly across to the station and to the street beyond, instead of going around by the public highway. There was no visible path across the tracks and no outlet to the street except over and along the platform at the station. The child passed over the stile and across the tracks on her way to school as was her custom, and was struck by a passing train. It was held that there was no invitation and therefore no liability.

The consequences which usually follow these accidents

are so fearful and the conditions from which they result are usually so easily remedied, that the courts  upholding the attractive nuisance doctrine, it seems to us, have yielded to their sympathies and adopted a rule unknown to the common law, which, if carried to its logical conclusion would make the ownership of property unduly unsafe, if not intolerable.   If we admit that the rule exists, it is not for us to consider the consequences. But where the very existence of the rule is in question, the consequences may properly be taken into account.   Once it is adopted there is no logical stopping place this side of practical insurance of children; for no one can say what will not prove an attraction to the restless and inventive mind of an active child, or where a sympathetic jury will say the duty ends.   As we have seen, the tendency of the cases is to  limit the application of the doctrine.   But this is illogical, and any attempt of this kind is a matter of purely arbitrary distinctions.   The disagreement of the cases as to the underlying principles of the rule and this illogical attempt to limit its application afford confirmatory evidence that it is not predicated upon a solid foundation.   In our opinion it is not in harmony with well established principles and to adopt it would be to seriously impair the authority of *Fay* v. *Kent* and *Kennedy* v. *Morgan*.   If there is a question of expediency involved, as some suggest,  it  is not  . for our  consideration.

Therefore, without in the least abating our respect for those eminent jurists with whose conclusions on this much vexed question we feel compelled to differ, and without meaning thereby to approve all that has been said by those courts with whom we align ourselves, we hold that liability is not shown by the averments of this declaration.

The point that the declaration is faulty because it does not contain an allegation that the parents of the intestate were free from contributory negligence is without merit.   Their negligence, if any, was  not proximate  but  remote,—*Ploof* v. *Burlington Trac. Co.*, 70 Vt. 509, 41 Atl. 1017, 43 L. R. A.  108, —and so of course would not have to be negatived.

*Judgment affirmed and cause remanded as per stipulation on file.*

HASELTON, J, considers that, irrespective of the doctrine of the turntable cases, so called, the declaration states a good cause of action; and he therefore dissents.